## STATE v. SULLIVAN.

1. OPINION—TESTIMONY—IMMATERIAL ERROR.—The trial judge erred in refusing to permit the surgeon, who made the *post mortem* examination of the deceased, in case of homicide, to state his opinion as to how the deceased was standing towards the pistol when the ball entered; but such testimony having been afterwards received, its exclusion in the first instance became harmless error.

2. HOMICIDE—EVIDENCE.—The defendant on trial for homicide was not prejudiced by excluding from evidence the statement made to defendant by one of his children at the time that a note from deceased was delivered to defendant on the morning of the homicide.

3. IBID.—IBID.—There was no error in striking out from the testimony the remark of the deceased, that defendant was not fit to live in a civilized community—such a remark not being a threat, nor necessarily showing ill feeling, and the witness otherwise testifying as to the feelings of deceased towards the prisoner.

4. WITNESS—CONTRADICTION.—Where a witness for the State is asked, on his cross-examination, whether he had not made statements contradictory to material facts just testified to by him, and he answers that he does not remember, proof of such contradictory statements may be introduced by the defendant. MR. CHIEF JUSTICE MCIVER *dissenting.*

5. THREATS—SELF-DEFENCE.—There was no error in refusing to charge a request based upon threats by deceased which ignored the requirements, that to sustain a plea of self-defence, the jury must determine whether the

circumstances were such as to justify a person of ordinary firmness in believing that he was in danger of death or serious bodily harm, and that a necessity to take life does not exist where there are other probable means of avoiding that necessity.

6. CHARGING JURIES.—There was no error in failing to charge that which was not requested.

7. IBID.—There was no error in refusing to charge a request which would have left the jury to judge of defendant's act from only one fact in the case and not from all the facts.

8. ASSAULT—The drawing of a pistol may in itself constitute an assault; and, therefore, the remark of the trial judge to the jury, "Simply drawing a pistol in a quarrel, I don't think, would be an assault, unless he offered to use it upon the person of another," was, under the facts of this case, misleading. MR. CHIEF JUSTICE McIVER *dissenting.*

9. CHARGING JURIES.—A remark made simply by way of illustration, outside of the facts of the case, is not calculated to mislead the jury.

10. NEW TRIALS—APPEALS—FACTS—CONDUCT OF COUNSEL.—This court cannot review an order of the Circuit Judge refusing a motion for new trial, on the ground of misconduct of the constables, where the facts are disputed, and no question of law is involved; nor on the ground that counsel made statements to the jury not sustained by the testimony.

11. APPEAL RECORD—EXCEPTIONS.—This court cannot declare whether counsel went too far in commenting on the record of former proceedings in the case, where such record is not before the court.

12. MURDER—INADVERTENT EXPRESSION.—In response to the request by the State's attorney, that the jury should be charged, "that neither had the right to assault the other with a pistol, and the man that did that was to blame," the trial judge did not err in charging: "I charge you that upon the presumption that the other had done nothing to justify or excuse it"— the words, "upon the presumption," being manifestly used in the sense of "provided."

13. MALICE—PROVOCATION.—Where a man kills another with malice under a previously formed intention to do so, he is not to be excused by the provocation given to him at the time of the homicide.

14. HOMICIDE—MISCONCEPTION OF CHARGE.—The charge of the judge in this case was misunderstood by counsel as referring to matters not in testimony, but, on the contrary, it properly left to the jury for determination whether the occurrences of the day before had any connection with the killing.

15.—NEW TRIAL ON NEW EVIDENCE—DEATH OF WITNESS.—A new trial should not be granted on the ground of after-discovered evidence, where the witness who made the post-trial disclosure had since died.

Before WALLACE and GARY, J. J., Anderson, October, 1893, and June, 1894.

.This was an indictment against J. Mims Sullivan for the murder of Herman G. Gilreath in Greenville, on June 14, 1892. The case was removed to Anderson for trial. See State *v.* Sullivan, 39 S. C., 400. Defendant was convicted of murder and appealed from the sentence.

*Messrs. S. W. Melton, Perry & Heyward, J. A. McCullough, J. W. Gray, J. E. Breazeale,* and *M. L. Bonham,* for appellant.

*Messrs. Ansel,* solicitor, *Earle & Mooney,* and *Tribble & Prince,* contra.

February 20, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY. J. Mims Sullivan, the appellant herein, was indicted for murder, in killing Herman G. Gilreath in Greenville, in said State, on the 14th of June, 1892. The case was continued by the defence on account of the absence of material witnesses, and at the fall (1892) term of court, the defence moved for a change of venue and challenged the array of jurors, on the ground that the sheriff of Greenville County, who was one of the officers charged with drawing the juries and with summoning them, was a half brother of the deceased.

The challenge to the array was sustained, the venue changed, and the case ordered to Anderson for trial. The case came on for trial at the October (1893) term of the Court of General Sessions for Anderson County, before his honor, W. H. Wallace, presiding judge, and a jury duly empanelled. Testimony was introduced in behalf of the State and also in behalf of the defendant. After being charged by his honor, the presiding judge, the jury rendered a verdict of "Guilty." The prisoner was sentenced by the presiding judge to be hanged on Friday, the 22d of December, 1893. The defendant's counsel gave due notice of intention to appeal, and obtained an order staying execution of the sentence until the termination of the appeal. The appellant filed eighteen exceptions, which will now be considered.

*First exception.* "Because his honor erred in excluding the answer of Dr. Swandale, the State's expert, who made the *post mortem* examination of the deceased, to the question on cross-examination, 'Now, in your opinion, how was the deceased standing towards the pistol when the ball entered?'" In the case of the *State* v. *Merriman*, 34 S. C., 37, Mr. Justice McIver, speaking in behalf of the court, says: "The next question objected to was designed to elicit from the witness his opinion as to the position in which the gun must have been to produce the wounds found on the body. The court, after instructing the witness first to state the facts upon which he based his opinion, and then give his opinion, overruled the objection. The witness who was called on to make the *post mortem*, seems to have made a very intelligent and careful examination and proceeded to state the facts which such examination revealed, and the opinion which he had framed from such facts, to the effect that the muzzle of the gun must have been higher than the man who was shot. This, it seems to us, was clearly competent. See *Seibels* v. *Blackwell*, 1 McMull., 56; *Jones* v. *Fuller*, 19 S. C., 66."

In the case of *Hopt* v. *Utah*, 120 U. S., 436, Mr. Justice Field, as the organ of the court, uses this language: "The deceased came to his death from a blow inflicted upon the left side of his head, which crushed his skull. A *post mortem* examination of the body was made by a physician, who was allowed, against the objection of the defendant, to give his opinion as to the direction from which the blow was delivered, after he had stated that his examination of the bady had enabled him to form an intelligent opinion on that point. The ground of the objection was, that the direction in which the blow was delivered was not a matter for the opinion of an expert, but one which should be left to the jury. The court overruled the objection, and the defendant excepted. The witness stated as his opinion that the blow was delivered from behind and above the head of the person struck, and from the left towards the right. * * * The opinion of witnesses are constantly taken as the result of their observations on a great variety of subjects. All that is required in such cases is that the witness should be able

to properly make the observations, the result of which they give; and the confidence bestowed on their conclusions will depend upon the extent and completeness of their examination, and the ability with which it is made. The court below, after observing that every person is competent to express an opinion upon a question of identity, as applied to persons in his family or to handwriting, and give his judgment in regard to the size, color, and weight of objects, and to make an estimate as to time and distance, cited a great number of cases illustrative of this doctrine. * * * Upon the same principle the testimony of the physician as to the direction from which the blow was delivered was admissible. It was a conclusion of fact, which he would naturally draw from the examination of the wound. It was not expert testimony in the strict sense of the term, but a statement of a conclusion of fact, such as men who use their senses constantly draw from what they see and hear in the daily concerns of life."

It thus appears that the presiding judge was in error in excluding the testimony. The witness was, however, afterwards permitted to give such testimony, and the appellant was, therefore, not prejudiced by the exclusion of the testimony in the first instance. *Hopt* v. *Utah*, 120 U. S., 430. On the grounds last mentioned, therefore, the first exception is overruled.

*Second exception.* "Because his honor erred in excluding the statement made to Sullivan, the defendant, by one of his children at the time the witness, Robert Matthews, delivered the note from deceased to Sullivan on the morning of the killing, such conversation being a part of the *res gestae* of the delivery of the note." We fail to find in the arguments of appellant's counsel where any allusion is made to this exception, and we do not see how, in any point of view, the appellant has been prejudiced by the ruling of the presiding judge. See *State* v. *Belcher*, 13 S. C., 463; *State* v. *Jackson*, 32 *Id.*, 40-41; Greenl. Evid., § 108. The second exception is overruled.

*Third exception.* "Because his honor erred in striking out the testimony of the witness, M. L. Davis, that deceased said to him some time before the killing, in speaking of the defend-

ant Sullivan, that he was not fit to live in a civilized community." This expression did not amount to a threat, nor did it necessarily show ill feeling on the part of the deceased toward the prisoner. Furthermore, the witness was not permitted, immediately after the said testimony was excluded, to testify as to the feelings of the deceased toward the prisoner. The third exception is overruled.

*Fourth exception.* "Because his honor erred in refusing to permit the defence to put up a witness in reply to the State's witness, Finley, who swore at the trial that he did not remember whether he had made a different statement just after the trial or not, for the purpose of contradicting such witness, when the foundation for such contradiction had been properly laid." *Fifth exception.* "Because his honor erred in refusing to permit the defence to put up a witness in reply to the State's witness Finley, who swore at the trial that he did not remember whether he had made a different statement when the facts were fresh in his mind, and leaving the jury to determine the weight which should be given to his last statement, under the circumstances." These two exceptions will be considered together.

The only objection to the introduction of this testimony was because the witness said: "I do not remember whether I used those words or not," &c. The general rule on this subject is stated in Greenl. Evid., § 462, as follows: "The credit of a witness may also be impeached by proof that he has made *statements out of court, contrary to what he has testified at the trial.* But it is only in such matters as are relevant to the issue that the witness can be contradicted." S. P.: *Nettles* v. *Harrison*, 2 McCord, 230; *Anonymous*, 1 Hill, 251; *Smith* v. *Henry*, 2 Bail., 118; *Jones* v. *McNeil, Ibid.*, 466.

It is insisted, however, that the case of the *State* v. *Bodie*, 33 S. C., 118, lays down the rule that the witness cannot be impeached by showing he has made statements at another time contrary to those made on the stand, if he testifies that he does not remember making such contrary statements. The court in that case, after holding that the testimony was wholly incompetent and irrelevant, does say: "In addition to this, it does

not appear that Arthur denied the statements which were attributed to him, but simply said that he had no recollection of using any such language." This language must be construed in connection with the facts of the particular case in which it was used. The testimony of the witness in that case being incompetent and *irrelevant,* could not have been impeached by contrary statements made on the other occasions, even if he had *denied* making such contradictory statements. See authorities *supra.*

Starkie on Evidence, at p. 213, thus states the rule: "If the witness neither directly admit nor deny the act or declaration, as when he merely says that he does not recollect, or, as it seems, gives any other indirect answer not amounting to an admission, it is competent for the adversary to prove the affirmative, for, otherwise, the witness might, in every such case, exclude evidence of what he had done or said by answering that he did not remember." The Am. & Eng. Enc. Law, vol. 7, page 109, says: "Every witness under cross-examination in any proceeding, civil or criminal, may be asked whether he has made any former statement relative to the subject matter of the action and inconsistent with his present testimony, the circumstances of the supposed statement being referred to sufficiently to designate the particular occasion, and if he does not distinctly admit that he has made such a statement, proof may be given that he did in fact make it." The evidence which the witness Finley gave on the stand was, unquestionably, *relevant,* and the testimony of contradictory statements at other times should not have been excluded. The fourth and fifth exceptions are sustained.

*Sixth exception.* "Because his honor erred in refusing to charge defendant's request to charge, '5a, upon the subject of threats.

It is as follows: If the defendant honestly and with good reason considered that the note which it is alleged he received on the morning of the fatal encounter, was a threat on the part of deceased to do him some serious bodily harm, and if, when they afterwards met, the conduct of the deceased was such as to indicate an intention of immediately carrying such threat into execution, the defendant, if without

fault in bringing on the difficulty, was justified in standing his ground, and using such means as were in his power for his own defence, and if death ensued thereby, the homicide would be excusable.' "

In the case of *State* v. *McGreer*, 13 S. C., 464, the Circuit Judge was requested to charge the jury: "If the prisoner really thought his life was in danger, or that he was in danger of great bodily harm, he is not guilty, *provided he did not negligently come to his conclusion*" (italics ours). This he refused to do, but charged "that the prisoner was not to be the judge as to the necessity to inflict the battery, but that the jury was to judge of the necessity." Upon the appeal to the Supreme Court the following rule was laid down by this court: "To make out a case of self-defence, two things are necessary: 1. The evidence should satisfy the jury that the accused actually believed that he was in such immediate danger of losing his life, or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant. 2. That the circumstances in which the accused was placed were such as would, in the opinion of the jury, justify such a belief in the mind of a person possessed of ordinary firmness and reason. It is not a question which depends solely upon the belief which the accused may have entertained; but the question is, what was his belief, and whether under all the circumstances as they existed at the time the violence was inflicted, the jury think he ought to have formed such belief."

Mr. Justice McIver, in delivering the opinion of the court in *State* v. *Wyse*, 33 S. C., 582, says: "The plea of self-defence rests upon the idea of necessity—a legal necessity—that is, such a necessity as in the eye of the law will excuse one for so grave an act as the taking of human life. * * * Whether such necessity existed in a given case, must be judged of by the jury and not by the person accused. The jury should not ask themselves the question what they would have done under the circumstances surrounding the accused at the time; * * * but they should, as sworn officers of the law, look carefully at all the circumstances surrounding the accused, as they appeared at the time the fatal wound was inflicted, and ask themselves two questions: *First.*

Did the accused at the time believe that he was in such immediate danger of losing his life, or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant? *Second.* Were those circumstances such as would justify such a belief in the mind of a person of ordinary firmness?" The case of *State* v. *McIntosh,* 40 S. C., 361, says: "Where it appears that there were other probable means by which the shedding of human blood might have been avoided, it can not, with any propriety, be said that there was any such necessity to take human life as would excuse the slayer."

This request was objectionable, because: 1st. It ignored that requirement of the law of self-defence that "the circumstances in which the accused was placed must be such as would, in the opinion of the jury, justify such a belief in the mind of a person possessed of ordinary firmness and reason." 2d. It ignored that element of the law of self-defence, that "where it appears that there are other probable means by which the shedding of human blood might be avoided, it cannot, with any propriety, be said that there was any such necessity to take human life as would excuse the slayer." The sixth exception is overruled.

*Seventh exception.* "Because his honor erred in omitting to charge the law in reference to threats and their effect as applicable to the testimony in this case, in which the effect of threats was such a prominent and important part of the testimony and case. In the case of *State* v. *Dodson,* 16 S. C., 463, the court says: "A judge is not bound to lay before the jury *all* the law which might, under *any* circumstances, apply to the offence charged, but only such principles as are applicable to the case as made by the evidence; and if the party charged desire to have any other principles of the law laid down to the jury, it was his duty to request the judge to instruct the jury as to such other propositions as he may desire the jury to be informed of." The charge of his honor, the presiding judge, was very full as to the law of the case generally. The accused was represented by an array of able counsel, and it was their duty to have embodied in their requests to charge, such other propositions of law as they thought were applicable to the facts in the case. The seventh exception is overruled.

*Eighth exception.* "Because his honor erred in refusing to charge defendant's eighth request to charge. It is as follows: 'If the defendant was without fault in bringing on the difficulty, and believed at the time he fired the fatal shot that deceased had thrown, or was in the act of throwing, his hand to his right hip pocket for the purpose of drawing his pistol, he was justified in firing without retreating, or waiting to become certain of the purpose of deceased in so doing." This request was not only objectionable for the reasons stated in discussing the sixth exception, but also on the ground that it attempted to make the jury determine the right of the accused to fire without retreating, &c., from certain particular facts in the case, and not from all the facts in the case. The eighth exception is overruled.

*Ninth exception.* "Because his honor erred in refusing to charge defendant's ninth request to charge. It is as follows: 'If the jury believe that the defendant was without fault in bringing on the difficulty, and was unlawfully assaulted by the deceased, and that the deceased was making towards the defendant with his stick in his hand in a threatening manner, and the stick in the hands of the deceased was sufficient to cause the defendant to apprehend serious bodily harm or death, and if the defendant believed that the object on the part of the deceased in thus assaulting him was to do him some serious bodily harm, the defendant was justified to draw his pistol, and demanding of deceased 'to stand back,' and if deceased refused to stand back, or did any act manifesting an intention, real or apparent, to draw his pistol, the defendant was justified in taking the life of the deceased, if he honestly believed his life or limb was in imminent jeopardy, and, as a man of ordinary firmness and reason, was justified in that belief.' " This request was objectionable on two grounds: 1st, because it ignored that element of self-defence that a person cannot take human life where there are probable means by which the shedding of human blood can be avoided; and, 2d, because it was an attempt to make the jury arrive at their conclusion from particular facts instead of reaching such conclusion from all the facts in the case. The ninth exception is overruled.

*Tenth exception.* "Because his honor erred in charging the jury, in reply to the request of Judge Melton: 'Will your honor please explain to the jury that if one attempts to draw a pistol, that is action?' 'That would depend on circumstances whether it was an assault or not. Simply drawing a pistol in a quarrel, I do not think, would be an assault unless he offered to use it upon the person of another,' when he should have charged that if two men are in a quarrel and one of them draws a pistol, the other is not bound to wait to ascertain what he is going to do with it, for such delay might be fatal to his life."

The remark of his honor that "Simply drawing a pistol in a quarrel, I don't thnk, would be an assault, unless he offered to use it upon the person of another," taken in connection with the facts of this case, was calculated to mislead the jury. From this remark the jury might reasonably have come to the conclusion that two things are necessary when a pistol is drawn in a quarrel, to constitute an assault: 1st, that the pistol had to be drawn; and, 2d, that there was an offer to use it upon the person of another. The drawing of the pistol may itself constitute the assault. *State* v. *Jackson,* 32 S. C., 27. This exception is sustained.

*Eleventh exception.* "Because the charge of his honor upon this defendant's request to charge '4b' was misleading to the jury, and not responsive to any testimony in the case. It was not responsive to any testimony in the case because no witness testified that the deceased was standing quarreling with a pistol in his hand, or that he drew a pistol at all. It was misleading to the jury, because the defendant's defence was, that in a quarrel the deceased had attempted to draw a pistol, and that he shot to preserve his life, and the jury could well reason from his honor's statement, that 'simply drawing a pistol in a quarrel, I do not think, would be an assault, unless he offered to use it upon the person of another,' suited the case, for Sullivan and Gilreath were quarreling, and even if Gilreath had actually drawn a pistol, unless he tried to use it, it would not have been an assault. Therefore, as he did not get to draw his pistol, to see whether he intended using it or not, of course

he did not assault Sullivan, and he was not justified in shooting.'' The remark of his honor to which the appellant excepts was simply used as an illustration, and was not calculated to mislead the jury. The eleventh exception is overruled.

*Twelfth exception.* ''Because his honor erred in refusing to grant a new trial to the defendant on account of the misconduct of the constable in charge of the jury, in telling the jury that they could not see the judge, but would have to reach their verdict on the instructions that had been given them.'' *Thirteenth exception.* ''Because his honor erred in refusing to grant a new trial to the defendant on account of the misconduct of the jury in reaching their verdict as they did. The facts upon which these exceptions are predicated were disputed. They are not reviewable by this court. If the trial judge in refusing the motion for a new trial had committed error of law, this court would correct such error. No such question, however, is raised by these exceptions.'' The twelfth and thirteenth exceptions are overruled.

*Fourteenth exception.* ''Because his honor erred in refusing to grant a new trial to the defendant on account of the counsel for the State, Mr. Prince, making derogatory and denunciatory statements against the defendant in his argument to the jury, which nowhere appeared in the testimony.'' No objection was made to the remarks of Mr. Prince, but even if objection had been made, it would not have been sufficient ground for a new trial. The fourteenth exception is overruled.

*Fifteenth exception.* ''Because his honor erred in refusing to grant a new trial to the defendant on account of the counsel for the State, Mr. Earle, commenting to the jury on the previous action of the court in this case, the delay in coming to trial, and change of venue, and drawing inferences unfavorable to the accused from these things, when none of them should have been permitted to be discussed by the State.'' When the defendant's counsel interposed their objection to the remarks of Mr. Earle, the presiding judge replied: ''As I understand, the entire record has been put in evidence by consent.'' The record alluded to is not set forth in the ''Case,'' and this court can not determine in its absence within what bounds the

remarks of Mr. Earle should have been confined. This court, however, deems it proper to say that it is in nowise to be understood as lending sanction to comments by attorneys as to matters not before the court in the particular case. The fifteenth exception is overruled.

*Sixteenth exception.* "Because his honor erred in his charge to the jury upon the solicitor's second request to charge, in presuming that neither of the parties had done anything to justify the other in assaulting him with a pistol." The presiding judge, after reading the concluding part of the solicitor's second request, to wit: "But neither had the right to assault the other with a pistol, and the man that did that was to blame," said: "Well, I charge you that upon the presumption that the other had done nothing to justify or excuse it." The context clearly shows that the words "upon the presumption" were used in the sense of "provided," and we are satisfied that the jury was not misled by them. The sixteenth exception is overruled.

*Seventeenth exception.* "Because his honor erred in his charge to the jury upon the solicitor's third request to charge. It is as follows: 'That if the jury believe from the evidence that the defendant Sullivan, in the morning of the homicide, armed himself with a pistol, intending to kill the deceased, Gilreath, if he met him that morning, and they afterwards did meet, and Sullivan did carry out his purpose by killing him, then no provocation that Gilreath might have given him immediately before the fatal shot was fired, would excuse the killing, and the defendant would be guilty of murder.'" His honor, the presiding judge, said: "Well, I charge you that, because that proceeds upon the assumption that the killing was done with malice, as I will explain to you hereafter; that if a man meets another and kills him upon a previously formed intention of killing him, that is murder." The request coupled with the explanation of the presiding judge was free from error. The seventeenth exception is overruled.

*Eighteenth exception.* "Because his honor erred in refusing to charge the jury that the transactions of the day before the killing (June 13) had no connection whatever with the oc-

currence on the day of the killing, and misled the jury by saying, 'I think that would depend upon circumstances. Suppose, for instance, one man tells another: I will meet you to-morrow morning and settle the matter, the quarrel may be adjourned;' and to counsel's statement, 'It is not that in this case, may it please your honor,' replied, 'That is for the jury to determine,' when there was no testimony to support his honor's supposition." When his honor used the words: "That is for the jury to determine," he evidently referred to the transactions of the day before the killing, and in this we see no error.

It is the judgment of this court, that a new trial be granted.

MR. CHIEF JUSTICE MCIVER, *dissenting.* I regret to say that I am unable to concur in the conclusion that there should be a new trial in this case, for I do not think that the grounds relied upon for that purpose can be sustained. The pressure of other and more important official duties forbids me from now devoting the time necessary for the preparation of the reasons for my dissent, and I do not feel justified in delaying the disposition of this appeal until I could find the time necessary for that purpose.

                                        Judgment reversed.

Pending the appeal in this case, a motion was made before this court for leave to apply to the Circuit Court for a new trial on the ground of after-discovered evidence. This motion was granted. See 41 S. C., 506. The motion for new trial was then made on Circuit before Judge Ernest Gary, on the following affidavit, and others:

"Personally comes W. B. Stoddard, who, upon oath, says: That he was well acquainted with Herman G. Gilreath, and that he knows the defendant, J. Mims Sullivan. That he was a personal friend of the deceased, Herman G. Gilreath. That on the evening of the 13th day of June, 1892, in the city of Greenville, between the hours of 10 and 11 o'clock p. m., he met in the Mansion House, Herman G. Gilreath. They walked out of the Mansion House together, and walked up Main street to Humphrey's shoe store, and stopped at the corner. As de-

ponent and Herman G. Gilreath walked up the street together, and when at the corner aforesaid, he told this deponent that he had had a difficulty with one J. Mims Sullivan, the defendant, and that he, Gilreath, intended on the following morning to write to said Sullivan a note; and that he, Gilreath, intended to give Sullivan a street caning for the gross insult that he had given him, presenting his walking cane at the same time; further stating that he did not want to shoot Sullivan, and said if Sullivan resented the caning, and it was necessary, he would use *this thing*, presenting his pistol. Deponent warned the said Gilreath at the time of making statement, that he should not be talking in that way, even if he intended to do a thing of that kind, whereupon he asked in reply this deponent to 'say nothing about what he had told him,' 'that he would hear from the whole matter before sundown on the following day.' That deponent did not tell any one of the conversation until after the defendant had been tried and convicted. That deponent is an attorney at law, and is clerk and attorney for the board of county commissioners for Greenville County. (Signed) W. B. Stoddard. Sworn to and subscribed before me, this 19th February, 1894. W. D. Metts, C. C. P."

The order of the Circuit Judge was as follows: This is a motion made before me upon affidavits *pro* and *con* for a new trial upon after-discovered evidence, the Supreme Court having suspended the appeal in this case until this motion can be made. After hearing the motion and giving due consideration to the same, and after argument of counsel, the State having shown, among other things, that one of the material witnesses, to wit: W. B. Stoddard, has died since the making of his affidavit, and that two of the other persons whose affidavits are material which were used have been convicted of infamous offences, and that the same could not, under the rules of law, be used on the trial of the cause; and it, therefore, not appearing to me that the result would probably be different from the other evidence exclusive of this, I cannot grant the motion. It is, therefore, considered by the court and ordered, that the motion for a new trial upon after-discovered evidence be, and the same

is hereby, refused. It is further ordered, that a copy of this order be certified to by the clerk of this court, and be sent to the clerk of the Supreme Court of this State, to be there filed with the record of this case in that court.

The defendant appealed from this order, and the appeal was argued at the same time and by the same attorneys as the appeal from the judgment of Judge Wallace.

February 20, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY. This was a motion for a new trial on the ground of after-discovered evidence; previous leave therefor having been granted by the Supreme Court (41 S. C., 506). All the affidavits used in the Supreme Court upon the motion to suspend the hearing of the appeal until the appellant could make a motion in the Circuit Court for a new trial, on the ground of after-discovered evidence, were used on the Circuit. Among these was the affidavit of W. B. Stoddard, which will be set out in the report of the case. The said W. B. Stoddard died suddenly subsequent to the hearing of the motion to suspend hearing of the appeal by this court, and before the hearing of the motion herein on Circuit. After hearing read the said affidavits, and after argument of counsel, his honor, Judge Gary, signed the order, which will also be incorporated in the report of this case.

The following is appellant's exception to said order: "His honor erred in holding that W. B. Stoddard having died since the making of the affidavit, the same could not, under the rules of law, be used on the trial of the cause, and it, therefore, not appearing that the result would probably be different from the other evidence exclusive of this, the motion should be refused. Whereas he should have held that the said affidavit was properly before the court, was competent for the purposes of said motion, and was entitled to as much consideration as if the said W. B. Stoddard had not died."

. If the Circuit Judge had granted a new trial, the testimony of W. B. Stoddard could not have been introduced in evidence upon such trial, because of the death of the said W. B. Stoddard, and the Circuit Judge was not in error in

refusing to consider said affidavit.  The courts are not organized for the purpose of deciding legal abstractions.  These views are in harmony with the principles announced in the case of *State* v. *Ezzard*, the syllabus of which [in 19 S. E. Rep., 854,] is as follows: "A motion to suspend an appeal, to enable defendant to move for a new trial on the ground of newly-discovered evidence, will be overruled where it is supported only by affidavits of defendants, who did not testify on the trial, as to his connection with the transactions out of which the prosecution arose, *and of witnesses resident beyond the jurisdiction of the court*" (italics ours).  The importance of the fact that the witnesses are within the jurisdiction of the court, is shown by the case of *State* v. *Files*, 3 Brev., 304, in which the court, in refusing a motion for continuance on the ground of the absence of material witnesses, says: "Three things are necessary: 1. That the witness is really material, and appears to the court so to be.  2. That the party, who appears, has been guilty of no neglect.  3. That the witness can be had at the time to which the trial is deferred."

It is the judgment of this court, that the order of the Circuit Court be affirmed.