19576

The STATE, Respondent, v. Marvin E. BOTTOMS, Appellant

(195 S. E. (2d) 116)

188

*Messrs. Felix L. Finley, Jr.,* and *John T. Gentry,* of Pickens, *for Appellant,*

*Messrs Daniel R. McLeod. Atty. Gen.,* and *Dudley Saleeby, Jr., Asst. Atty. Gen.,* of Columbia, and *Thomas W. Greene, Sol.,* of Greenville, for Respondent,

February 28, 1973.

BUSSEY, Justice:

Appellant Bottoms was charged with having murdered one Billy Ellenburg on or about the 20th day of August, 1969, at 108 Belmont Circle in Easley, Pickens County. At his first trial in June 1970, a mistrial resulted, the jury being unable to agree upon a verdict. Upon his second trial, commencing on November 29, 1971, he was convicted of manslaughter and sentenced to a term of ten years.

At the time of the homicide, appellant was married to but separated from Mary Sue Bottoms, who was living with the two Bottoms children at 108 Belmont Circle, which residence was jointly owned by her and appellant. The deceased Ellenburg was married but was living with Mrs. Bottoms rather than his wife. Appellant Bottoms was living with a girl friend in Greenwood, South Carolina. There is evidence to the effect that he had no objection to the deceased living with his wife, but also evidence which supports a contrary inference.

Other than Mrs. Bottoms, the decedent and possibly the appellant, no one else was present at the time and place of the homicide, which occurred in the early morning hours. Shortly thereafter Mrs. Bottoms gave the investigating officers a lengthy written statement to the effect that Bottoms had shot and killed the said Ellenburg, including all

details, circumstances, and events leading up to the homicide. Her testimony at the coroner's inquest a few days later was to the same effect. At the first trial, however, she repudiated both the statement and her testimony before the coroner and testified that it was she, rather than Bottoms, who shot and killed Ellenburg. Her testimony upon the second trial was to the same effect. In the course of her direct examination, she testified unequivocally that her written statement and her testimony at the coroner's inquest were both untrue.

What we regard as the primary questions on this appeal arise out of the use made by the prosecution, both in evidence and argument, of the prior inconsistent statements of Mrs. Bottoms which she had freely and unequivocally admitted making and repudiated as being false. The record shows that the cross-examination of Mrs. Bottoms occupies nearly twenty-five pages of the printed transcript, and a considerable portion thereof was devoted to the publication of the contents of the written statement and testimony at the coroner's inquest, previously repudiated by Mrs. Bottoms as false. Early in the course of her cross-examination, counsel for appellant requested the court to instruct the jury that these prior statements could not be received as substantive evidence and could only be received for the purpose of contradiction. Still later, counsel further objected to the publication of the contents of the prior statements as being "contrary to law." In both instances the court declined to rule in favor of the appellant.

The jury argument of the solicitor was recorded and is contained in the record. An analysis thereof shows that he relied, rather heavily we think, upon the prior repudiated statements of Mrs. Bottoms as being the truth of the matter, in effect treating such as substantive evidence. Counsel for appellant did not interrupt in the course of the argument, but, upon its conclusion, made a motion for a mistrial on the ground that such argument was highly improper,

which motion was overruled. In the course of his charge, his Honor did instruct the jury that it must not consider as evidence arguments of counsel and that no statement of any witness made out of court, which was inconsistent with the sworn testimony of the witness, could be taken as a substantive fact or evidence thereof, but was only allowed for the purpose of impeaching the witness. While not admitting that there was error, it is argued by the State that any error with respect to the prior statements of Mrs. Bottoms was cured by his Honor's charge. We think not.

The record shows that the actual trial, not counting impaneling the jury, consumed two very full days. The prior statements of Mrs. Bottoms were published at great length in the course of cross examination, over objection and without appropriate contemporary instructions and argued at length to the jury. We think there was prejudicial error and that such, under the circumstances, could not be cured by a relatively brief portion of the charge couched in general terms.

In 133 A. L. R., commencing at page 1454, there is an annotation dealing with extrajudicial statements by a witness. At page 1455 we find the following:

"The general rule is almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness, and is not competent as substantive evidence of the facts to which such statements relate."

Cited in support of the text are the South Carolina cases of *Bank of Parksville v. Dorn,* 126 S. C. 368, 120 S. E. 72; *Sumter v. American Surety Co.,* 174 S. C. 532, 178 S. E. 145; *Squires v. Henderson,* 208 S. C. 58, 36 S. E. (2d) 738.

We quote the following appropriate language from *Mc-Millan v. Ridges,* 229 S. C. 76, 91 S. E. (2d) 883, 884: "Here the admissions of the witness that he made the ma-

terial portions of the conflicting statement rendered it unnecessary that it be offered in evidence, *even incompetent and subject to that objection had it been offered.* 'The purpose in calling a witness' attention to his prior inconsistent statements before offering them in evidence to impeach him is to give him an opportunity to admit or deny them, or to explain them. If he admits that he made the statements in question, there is no necessity for proving them and they are not admissible in evidence.' 58 Am. Jur. 429, 430, Witnesses, Sec. 780." (Emphasis added.)

To the same effect is 98 C. J. S. Witnesses § 610, p. 611, where it is said, *inter alia,* that if the witness admits unequivocally that the inconsistent statement was made, he has thereby impeached himself and further evidence thereof is unnecessary and inadmissible. Even where the making of the inconsistent statement is denied and it is appropriate to introduce such for the purpose of impeachment, it is the duty of the court, upon request, to instruct the jury that it can consider such evidence for the purpose of impeachment only, not as substantive evidence of the facts. 98 C. J. S. Witnesses § 628, p. 643.

"To discredit a witness by showing that he made a contradictory material statement out of court is one thing, and it justifies argument that he is unworthy of belief. But it is quite another thing, and not justified, to predicate an argument for conviction on the unsworn contradictory statement out of court, in defendant's absence, as if it were a substantive fact proved." Quoted in *Hill v. State* (1918), 118 Miss. 170, 79 So. 98, from *Middleton v. State,* 80 Miss. 393, 31 So. 809, 810.

For the foregoing reasons we reverse the judgment of conviction and remand for a new trial.

Altogether twelve questions were argued on appeal. Several of them need not be discussed at all since they should not arise again upon another trial. Oth-

ers involved the admission and/or exclusion of evidence and, as to such, it is well settled that the trial judge has very broad discretion. Some of the admissions and exclusions here complained of, however, at least border upon if they do not constitute prejudicial error. Those that are likely to arise again in some form we shall discuss, but only generally, for the guidance of the court and counsel upon retrial. In doing so, we realize that the same or similar questions may again arise in different form or context and we do not mean by anything we say to hamper the discretion of the judge who will be called upon to try the case again.

The State offered as a reply witness Officer Saxon, one of the officers who arrived upon the scene shortly after the homicide, who, over objection, was permitted to testify as to the statements allegedly made by Mrs. Bottoms at the scene, in conflict with her testimony upon the trial. The record does not disclose, we think, a proper foundation for the proffered impeachment testimony of Officer Saxon. Moreover, Mrs. Bottoms already stood impeached by admitted prior contradictory statements and it is at least questionable, under all of the circumstances, whether his testimony would have been admissible even had a proper foundation been laid.

The State offered as a reply witness one Wyatt League who was allowed to testify, over objection of the appellant. Upon the record before us we fail to see where his testimony was in reply to any relevant, material evidence adduced by the defense.

Near the end of the direct examination of Mrs. Bottoms, counsel proposed to ask the following questions:

"Sue, are you aware of the fact that a warrant has been issued charging you with the murder of Billy Ellenburg," "And in fact has been done" . . . "and being aware of that, is this still your testimony?"

Upon objection by the State he was not allowed to propound the questions. It is doubtful that the exclusion of the proffered testimony was prejudicial

since Mrs. Bottoms was allowed to testify, without objection, that she realized that as a result of her testimony she could be charged with the crime of murder. On the other hand, we think his Honor might well have allowed the question. The witness stood impeached by her prior contradictory statement and testimony. The credibility of the testimony she was then giving was a most important issue in the trial and the extent to which she realized that her testimony was against her own self-interest seems to us to be an appropriate matter for the consideration of the jury in weighing her credibility. No authority directly in point has been cited or come to our attention. In Wigmore, (3d) Ed., Sec. 1963, it is said, *inter alia,* that "a witness may state whether he has any bias or ill-feeling." It would seem that the realization of the extent to which the testimony of a witness was adverse to his own self-interest would be even more relevant on his credibility than the absence or presence of any ordinary bias on his part.

In the course of the cross examination of one Moody, a witness for the State who knew both the appellant and the deceased, he was asked if appellant "was scared of" the deceased, to which he replied, "Yes, I knew." The State promptly objected and the judge promptly sustained the objection and ordered the question and answer stricken. The record possibly suggests but does not clearly disclose the basis of Moody's opinion, which he was not allowed to testify to. The weight of authority appears to be to the effect that a layman is perfectly competent to express an opinion as to fear on the part of another, provided the opinion is predicated upon observation of appearance or conduct and not merely upon statements of the party said to be afraid. *State v. Stockman,* 82 S. C. 388, 64 S. E. 595; *State v. James,* 31 S. C. 218, 9 S. E. 844; 32 C. J. S. Evidence § 546(38)b , p. 207. We think that the trial judge, before excluding the evidence of Moody, should have at least sought to determine whether or not the basis of his

opinion was such as to make his opinion admissible in evidence.

Appellant denied that he was at the scene of the homicide and sought to prove his fear of the decedent as bearing on the improbability of his having gone there under the circumstances reflected by the evidence. The probation officer for Pickens County was called as a witness for appellant. He had had the decedent under supervision for ten years, and testified adversely as to the reputation of the deceased. He was asked, "Did Marvin Bottoms ever ask for protection from Billy Ellenburg?" The court sustained an objection by the State to the effect that such was "self-serving and it would be hearsay." It is now asserted that the exclusion of this evidence was error. Appellant cites no authority in support of this contention. In the case of *State v. Adams*, 68 S. C. 421, 447, 47 S. E. 676, 677, it was held, "The rule is that a defendant cannot introduce in his defense his own statements made to others."

The case of *State v. Dean*, 72 S. C. 74, 51 S. E. 524, is to the same effect. We intimate no opinion as to the soundness of these decisions, but in the absence of being overruled, which we have not been asked to do, they are dispositive of this particular issue. It is, however, we think of interest that the rule applied in the cited cases has been most strongly criticized by Professor Wigmore as being unsound. See Wigmore on Evidence, (3d Ed.), Sec. 1732. The Virginia case of *Parsons v. Commonwealth*, 138 Va. 764, 121 S. E. 68, is strongly in accord with the view of Professor Wigmore. To the *contra*, however, see the decision of the Supreme Court of Alabama in *Hawkins v. State*, 239 Ala. 532, 195 So. 765.

The judgment below is reversed and the case remanded for a new trial.

Reversed and remanded.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.