591 S.E.2d 632

The STATE, Respondent,

v.

Brentley Allen BLALOCK, Appellant.

No. 3708.

Court of Appeals of South Carolina.

Heard Oct. 8, 2003.
Decided Dec. 8, 2003.
Rehearing Denied Jan. 30, 2004.

Jack B. Swerling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

KITTREDGE, J.:

Brentley Blalock was tried on two counts of criminal sexual conduct with a minor. Blalock was acquitted on one count and convicted on the second count. Blalock appeals his conviction, arguing the trial judge committed reversible error by allowing the state to present extrinsic evidence in connection with a prior inconsistent statement by his wife, Lee Blalock. We affirm, finding the trial court did not abuse its discretion in admitting the evidence.[1]

## FACTS/BACKGROUND[2]

On July 11, 2000, 14–year–old ˌJane Smith [3] and her family visited the home of their neighbors, Brentley and Lee Blalock.

---

1. Blalock's appellate counsel did not represent Blalock at trial.

2. Our discussion is limited to the facts and circumstances in connection with the charge resulting in a conviction.

3. The minor victim and her family are identified by a fictitious name.

After passing the afternoon with the Blalocks, the Smiths returned to their nearby home. Jane, however, asked and was allowed to stay for a while longer. Brentley Blalock, Lee Blalock, one of their sons, and Jane continued watching television and "playing around" in the living room. After a while, Ms. Blalock left the room to take care of some chores in the adjacent kitchen. During this time, Jane claimed Brentley Blalock committed a sexual battery upon her.

At the center of this appeal is a statement Ms. Blalock provided to a police detective investigating the incident on the evening of July 11, 2000. In the statement, transcribed by the detective, Ms. Blalock described what she saw that night. In the critical portion of the narrative, Ms. Blalock reportedly said that when she returned from the kitchen to the living room she "saw [Jane] laying on her stomach in front of the T.V. Brentley [Blalock] was sitting beside her. I noticed he had his hand under her pants leg on her backside."

At trial, the prosecution called Ms. Blalock as a witness and examined her regarding what she saw on July 11, 2000— focusing primarily on her statement to the police detective. Initially, however, the solicitor did not confront her with the exact words recorded in the statement. Instead, the solicitor characterized Ms. Blalock's statement in different terms-adding and deleting key words and changing the order of the words.

The solicitor first asked Ms. Blalock whether she saw her "husband's hand under [Jane's] pants and on her bottom." The solicitor's substitution of the word "pants" for "pants leg" and "bottom" for "backside" contributed to the confusion that would follow. Ms. Blalock answered "no" and attempted to explain:

> I did not see his hand on her butt per se, just for lack of a better word. When I walked in, they were fine, looking at television. She had shorts on that were what would have been acceptable for school. Her parents didn't allow her to wear teenybopper type clothes. So, they were kind of long and I did see his hand underneath her shorts on her leg.

Ms. Blalock apparently then tried to correct the solicitor's misquotation of her statement, explaining that "in my statement, it says on her back side." Before Ms. Blalock could

continue, however, the solicitor protested to the court that she was being "non-responsive" and asked for permission to "take her as a hostile witness to impeach her under Rule 607," which was allowed.

The solicitor then presented Ms. Blalock with a copy of her statement and had her read aloud the sentences quoted above. Again, when asked to confirm or deny the statement, Ms. Blalock instead tried to explain: "I'm saying that maybe some of the details are missing [from the statement]. Just like you pointed out with Jane, a few minutes ago, all of the details were not included. When you're upset in a time like that, you don't think to include everything."

After further questioning, the solicitor returned to the statement a third time, but once again the solicitor changed the actual wording, asking Ms. Blalock: "You saw his hand on her back side under her pants?" Ms. Blalock again attempted explanation, responding:

A. [Ms. Blalock] Her back side of her leg. That's another thing that was left out.

Q. [Solicitor] Okay. And when did you come up with that? When did you realize that was missing?

A. That was sometime after the, all the reports were gone and I had time to think over things in my mind, and when I was more clear headed so I could remember more of the details of what went on.

After a break in the testimony, the solicitor revisited the statement a final time.

Q. [Solicitor] Mrs. Blalock, I want to show you your statement again, if I may, so that there's no misunderstanding. Okay?

A. [Ms. Blalock] (Witness nods affirmatively.)

Q. Did you say Brentley was sitting beside her, and I noticed he had his hand under her pants leg on her back side?

A. I said that portion, and for whatever reason, the detail of, of her leg, the back side, was left out.

Q. All right. So that's what you—?

A. But that portion, yes.

Q. Okay. Did you ever tell anybody back side of her leg until court today?

A. Well, I thought that I did.

Q. Okay. Who would you have told?

A. Detective Lindsey and cops or whoever else—.

Q. When would you have told Detective Lindsey?

A. —that may have been there.

Q. I mean you are saying it happened that night you told him after you signed it or the following week? When did you do this?

A. It would have been at the time of the statement.

Q. Okay. So, again, when you said that, on the back side, you, at that time, you would of told him of her leg?

A. I feel like I said that. If I didn't, you know, I may have been unclear about it or he may of, you know, been paraphrasing what I was saying.

Immediately following this colloquy, the solicitor attempted to offer the statement into evidence but withdrew the offer after defense counsel requested a bench conference.

The State next called William Lindsey, the police investigator who took Ms. Blalock's statement. When the State sought to publish the statement through Detective Lindsey, defense counsel objected, citing Rule 613(b), SCRE. The trial court overruled the objection and Ms. Blalock's prior inconsistent statement was published.

## STANDARD OF REVIEW

Our courts have consistently held that a trial court's decision to admit evidence of a witness's prior inconsistent statement will not be reversed absent a manifest abuse of discretion. *State v. Lynn*, 277 S.C. 222, 225, 284 S.E.2d 786, 788 (1981); *State v. Sierra*, 337 S.C. 368, 373, 523 S.E.2d 187, 189 (Ct.App.1999) (finding appellant must show both abuse of discretion and resulting prejudice).

## LAW/ANALYSIS

Blalock argues the trial court erred by admitting extrinsic evidence of his wife's prior statement to impeach her trial

testimony. The State claims this issue is not preserved for appellate review. We disagree on both counts.

In order to preserve an error for appellate review, a defendant must make a contemporaneous objection on a specific ground. Rule 103(a)(1), SCRE; *State v. Hoffman*, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994); *State v. Holliday*, 333 S.C. 332, 338, 509 S.E.2d 280, 283 (Ct.App.1998). The objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial judge. *McKissick v. J.F. Cleckley Co.*, 325 S.C. 327, 344, 479 S.E.2d 67, 75 (Ct.App.1996).

Here, defense counsel promptly objected when the State sought to introduce extrinsic evidence of Ms. Blalocks prior statement. First, the court promptly replied by referencing Rule 613(b), and the state withdrew the exhibit. Next, when Detective Lindsey was asked to publish Ms. Blalocks statement, defense counsel objected by reference to Rule 613(b). We find this evidentiary objection properly preserved. We have no difficulty discerning the issue from the targeted references by the trial court and defense counsel to Rule 613(b) and the context from which this issue arose.

Rule 613(b), SCRE, provides in pertinent part:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made, and is given the opportunity to explain or deny the statement. If a witness does not admit that he has made the prior inconsistent statement, extrinsic evidence of such statement is admissible.

The central question, therefore, is whether Ms. Blalock admitted making an inconsistent statement in her testimony. As described above, however, Ms. Blalocks testimony affords little in the way of a clear admission or denial. At various points in her testimony, she concedes that the material portions of the statement were in fact her own words; but she is simultaneously eager to explain and amend her words and intent. Overall, Ms. Blalock appears to have reacted as would be expected of anyone who realizes he or she has been called as the star witness against his or her spouse: self-conscious,

confused, and wary of how her testimony will be perceived by the jury.

In determining whether a witness has admitted making a prior inconsistent statement and thereby obviated the need for extrinsic proof, the courts of our state and other jurisdictions have held that the witness must admit making the prior statement unequivocally and without qualification. *See State v. Bottoms,* 260 S.C. 187, 194, 195 S.E.2d 116, 118 (1973) (when a witness admits unequivocally that a prior inconsistent statement has been made by him, he has thereby impeached himself and further evidence is unnecessary and inadmissible); 98 C.J.S. *Witnesses* 727 (2002) (stating admission must be unequivocal).

■ Generally, where the witness has responded with anything less than an unequivocal admission, trial courts have been granted wide latitude to allow extrinsic evidence proving the statement. For example, a witness's failure to fully recall her prior statement has been found to be a sufficient denial to allow extrinsic evidence. *State v. Brown,* 296 S.C. 191, 193, 371 S.E.2d 523, 524 (1988); *State v. Miller,* 262 S.C. 369, 371, 204 S.E.2d 738, 738–39 (1974); 81 Am.Jur.2d *Witnesses* 948 (2003) (stating that a witness may be impeached by proof of prior contradictory statements, where he merely testifies that he does not remember, or has no recollection of, making the statements referred to). Extrinsic evidence is also usually admitted when the witness simply avoids any direct answer. Confronted with this situation in *State v. Sullivan,* our supreme court held:

> If the witness neither directly admit [sic] nor deny [sic] the act or declaration, as when he merely says that he does not recollect, or, as it seems, gives any other indirect answer not amounting to an admission, it is competent for the adversary to prove the affirmative, for otherwise the witness might in every such case exclude evidence of what he had done or said by answering that he did not remember.

43 S.C. 205, 211, 21 S.E. 4, 7 (1895).

In this case, we find Ms. Blalocks response, when confronted with her prior statement, does not meet the standard of a clear and unequivocal admission that the precedent case law demands. We are mindful that, towards the end of the

solicitors examination of Ms. Blalock regarding the statement, she does admit that she said the portion of the statement quoted. She is adamant throughout her testimony, however, that the statement as recorded by the detective was incomplete. As demonstrated in the excerpted testimony above, Ms. Blalock repeatedly insists that she did not merely say she saw her husbands hand on Janes backside, but that she saw his hand on the back side of her leg. When the solicitor presses her on when and to whom she said back side of her leg, Ms. Blalock testifies that she feel[s] like that is what she told Detective Lindsey at the time he took her statement. Ultimately, she equivocates as to whether the statement was in fact her own words, testifying that she may have been unclear or that Detective Lindsey had paraphrased what she said.

Clearly, by repeatedly insisting that she said or intended to say back side of her leg instead of backside, Ms. Blalock was attempting to dispel the implication that she actually saw Brentley Blalocks hand on or near Janes genital area. This disparity, therefore, goes to the essential meaning of what Detective Lindsey recorded as Ms. Blalocks statement. The entire probative value of Ms. Blalocks statement and trial testimony hinges on where she saw her husbands hand on Janes body. Considered in toto, Ms. Blalocks testimony regarding her statement shrouds its meaning in doubt. Admission of extrinsic evidence to prove Ms. Blalock made the statement was therefore relevant to the jury's consideration of the veracity of Ms. Blalock as a witness and the consequent weight her testimony should be afforded.

We respectfully reject Blalocks position that State v. Lynn compels a different result. First, we are confronted with a different factual presentation. We do not believe Ms. Blalocks varying responses rise to the level of the unequivocal admission, as was present in Lynn, necessary to foreclose resort to extrinsic evidence. Second, as noted above, a significant feature in Lynn is the holding that the cross-examination of a witness to test his credibility is largely within the discretion of the trial judge, and his decision whether to allow the contradictory testimony will not be disturbed on appeal except for manifest abuse of discretion. State v. Lynn 277 S.C. at 225, 284 S.E.2d at 788. Considering we are governed by an abuse

of discretion standard, we cannot say under these facts that the trial judge erred in admitting extrinsic evidence of Ms. Blalocks prior inconsistent statement. Moreover, Detective Lindseys publication of the prior statement was cumulative to Ms. Blalocks previous, unchallenged publication of the relevant portion of her statement.

As a final observation, we acknowledge Blalocks concern with the conduct of the solicitor and his role in fostering the present controversy. We are persuaded, however, that Ms. Blalocks varying responses cannot be solely attributed to the solicitors paraphrasing of the prior statement.

### CONCLUSION

The trial court acted within its discretion in admitting extrinsic evidence of Lee Blalock's prior inconsistent statement.

**AFFIRMED.**

STILWELL and HOWARD, JJ., concur.