697 S.E.2d 662

**The STATE, Respondent,**

v.

**Thomas WEBB, Appellant.**

No. 4708.

Court of Appeals of South Carolina.

Heard March 2, 2010.

Decided July 7, 2010.

Rehearing Denied Aug. 26, 2010.

Appellate Defender LaNelle C. DuRant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Senior Assistant Attorney General Norman Mark Rapoport, Assistant Attorney General Mark R. Farthing, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney

General Salley W. Elliott, all of Columbia; Solicitor John Gregory Hembree, of Conway, for Respondent.

LOCKEMY, J.

Thomas Webb appeals his convictions for kidnapping, armed robbery, and first-degree burglary, arguing the trial court erred in (1) allowing the State to refer to Webb as a "wild animal" in its opening statement and closing argument; (2) allowing the State to include facts about Webb's hair in its closing argument; and (3) not allowing defense counsel to fully cross examine Joy Hines and Officer Mann regarding the charges against co-defendant Randy Gaunt. We affirm.

## FACTS

Webb was indicted on two counts of kidnapping, two counts of armed robbery, and one count of first-degree burglary. The State alleged Webb robbed Ellis and Fairey Price at gunpoint at 5:00 a.m. on October 22, 2005, in their Myrtle Beach motel room. At trial, the Prices testified two men identified themselves as maintenance workers at the motel and claimed they needed to check the room for a water leak. After entering the room and looking around, one of the two men left and returned with a gun. The two men threatened to kill the Prices and stole their cash, credit cards, jewelry, and camera before pulling the phone lines out of the wall and telling the Prices not to leave the room.

Officer Selena Mann, a detective with the Myrtle Beach Police Department, testified she received information that one of the Price's stolen credit cards was used at a nearby Wal–Mart within an hour of the robbery. Officer Mann obtained the Wal–Mart security tapes, which showed two men and a woman using the Prices' credit card. Officer Mann recognized Webb and his girlfriend Joy Hines and testified she knew where the two lived. Officer Mann obtained a search warrant for their apartment where police collected a revolver and the Prices' stolen camera. While executing the search warrant, Hines, who appeared at the residence, received a phone call from Webb telling her where the gun was hidden in the apartment and asking her to bring it to him. Police followed Hines to Webb's location, and he was arrested. Jewelry

belonging to Mrs. Price was found on Webb at the time of his arrest. Hines and Gaunt, who was in possession of the Prices' Sears credit card, were also arrested.

Hines testified for the State. She testified she drove Webb and Gaunt to the Prices' hotel and stayed in the car while the two men went inside. Hines testified that when Webb and Gaunt returned to the car they had a wallet, "fanny pack," and camera with them. She further testified Webb had a revolver that belonged to her, and he pointed it at her and told her to drive. According to Hines, Webb and Gaunt then counted the cash, and she drove to a gas station where she used a credit card from the wallet to pay for the gas. The three then drove to Wal–Mart where they used the Prices' stolen credit card.

The jury returned guilty verdicts on all charges against Webb, and the trial court sentenced him to thirty years' imprisonment on each kidnapping charge, fifteen years on each armed robbery charge, and thirty years for the burglary charge. All of Webb's sentences were to run concurrent with the exception of one armed robbery, which was to run consecutive to the others. This appeal followed.

## LAW/ANALYSIS

### I. "Wild Animal" Statements

Webb argues the trial court erred in allowing the solicitor to refer to him as a "wild animal" in his opening and closing argument. Specifically, Webb alleges the solicitor's statements inflamed the passions and prejudice of the jury. We disagree.

A solicitor's "argument must not be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences to it." *State v. Rudd*, 355 S.C. 543, 549, 586 S.E.2d 153, 156 (Ct.App. 2003). "The appropriateness of a solicitor's . . . argument is a matter left to the trial court's sound discretion." *Id.* at 548, 586 S.E.2d at 156. "An appellate court will not disturb a trial court's ruling regarding [a solicitor's] argument unless there is an abuse of that discretion." *Id.* "Improper comments do not require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument."

*Randall v. State,* 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004). "On appeal, an appellate court will review the alleged impropriety of the solicitor's argument in the context of the entire record, including whether the trial judge's instructions adequately cured the improper argument and whether there is overwhelming evidence of the defendant's guilt." *Rudd* at 550, 586 S.E.2d at 157. "The appropriate determination is whether the solicitor's comment so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*

In his opening argument, the solicitor stated:

Folks, I wonder if anybody here has ever seen a hyena, a dog-like creature, wild, feral, a scavenger, a predator. Not terribly bright, not king of the jungle but its vicious, malevolent, and it hops on weak, easy prey, a mean little thing. And I asked you that question because that's what this case reminds me of.

The solicitor then argued: "So, [Mr. Price] goes to open the door. That's when those wild animals strike. They want what they want. They have to have it right then, and they rush in the room." Later, the solicitor remarked: "Merely forty-five minutes to an hour after these wild animals robbed...." After this third statement, defense counsel objected to the characterization of Webb as a wild animal arguing it inflamed the passions of the jury. The trial court overruled the objection and determined the solicitor "wasn't referring to this individual.... He was referring to an act of someone." Defense counsel argued the term "wild animals" clearly referred to Webb, and the trial court responded: "I have permitted this. He's not talking to him. He's talking generally as to folks who might do this. He has not indicated him." The solicitor then agreed to say "armed robbers." Later, during his closing argument, the solicitor stated:

Well, I started off talking to y'all about hyenas. Once again, they are vicious animals, predatory scavengers always looking for the easy prey. They want—they don't want too hard for them (sic). Not terribly bright, and I think after listening to the facts of the case you understand why this case reminds me of hyenas.

The solicitor further remarked: "Like I said, hyenas aren't bright animals. They go to Wal–Mart with all the nice bright

lights, big cameras, and that's where they're caught." The solicitor concluded by stating: "Folks, you've been left firmly convinced. All I ask is that you do your job and you cage this wild animal. Put him away for what he did." Defense counsel did not object to the solicitor's closing argument.

■ Webb contends the solicitor's comments likening him to a hyena were prejudicial and deprived him of a fair trial. Specifically, Webb maintains the hyena comment was the first statement made by the solicitor to the jurors and thus was the first impression the jurors were given of Webb. Given the facts of this case, we find the solicitor's comments did not infect the trial with unfairness so as to deprive Webb of a fair trial. This case is similar to *Randall*, 356 S.C. 639, 591 S.E.2d 608. In *Randall*, our supreme court held a solicitor's closing argument wherein he referred to the defendant drug dealers as "dirty cockroaches" did not require a new trial because there was strong evidence of the defendants' guilt. 356 S.C. at 643, 591 S.E.2d at 610. The court also noted the solicitor's "dirty cockroach" argument only consisted of ten lines of the transcript and was not repeated throughout the trial. *Id.* at 643, 591 S.E.2d at 611.

Here, there was strong evidence of Webb's guilt. Joy Hines testified she dropped Webb and Gaunt off at the motel the night of the robbery, and they returned to the car with the gun, wallet, camera, and stolen credit cards. Webb, Gaunt, and Hines were also caught on surveillance cameras at Wal-Mart a short time after the robbery using the Prices' stolen credit cards. Moreover, Webb was arrested with Mrs. Price's jewelry in his possession, and the gun and stolen camera were found inside his apartment. Furthermore, the objected-to "wild animal" argument was not repeated throughout the trial. Accordingly, we find the solicitor's comments did not so infect the trial with unfairness as to make Webb's conviction a denial of due process.

## II. Hair Statements

■ Webb argues the trial court erred in allowing the State to include in its closing argument facts about his hair which were not in evidence. We disagree.

During his closing argument, the solicitor stated:

You heard the description that the Prices gave. Detective Mann told you of the description the Prices gave of the two men. All descriptions indicate that the man with the longer hair, the big man, he's the one with the gun. Mrs. Price told you she got a good look at the man with the gun. She's sitting there looking at him, the man with the gun on her saying, "Give me what you got. You're lying to us." The man she was so frightened of, that was the man with the tattoo on the upper arm. Both defendants had tattoos on the upper arm but she said he was definitely a big man with longer hair.

Defense counsel objected on the basis that the statement by Mrs. Price was not in evidence. The trial court overruled the objection and stated: "No, sir. I'll let the jury determine what's in the testimony."

 "A solicitor may not rely on statements not in evidence during closing argument." *State v. Huggins*, 325 S.C. 103, 107, 481 S.E.2d 114, 116 (1997). "Arguments must be confined to evidence in the record (and reasonable inferences therefrom), although failure to do so will not automatically result in reversal." *Id.* "A new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* Webb argues the solicitor's statements were prejudicial because his hair was long at the time of the robbery, and Mrs. Price testified that the gunman's hair was not long. Mrs. Price testified she knew the man with the gun had a tattoo on his right arm because his shirt sleeve was rolled up. Mrs. Price further testified the man with the gun looked like a "big biker guy" because "his arms were muscular." She testified that because she was looking at the gun during the robbery, she "wasn't looking at the hair that much." While Mrs. Price admitted she told police shortly after the robbery the gunman's hair "wasn't really long," she clarified her earlier description by saying "I also said he looked like a big biker which they have long hair ... I said he was a big biker or looked like a big biker, and to me the biker that I have in my mind has longer hair."

Webb's argument that the solicitor's comments regarding his hair were prejudicial is without merit. While there was conflicting testimony from Mrs. Price regarding the length of

the gunman's hair, the jury is the ultimate fact finder. *See McDill v. Mark's Auto Sales, Inc.*, 367 S.C. 486, 492, 626 S.E.2d 52, 56 (Ct.App.2006) (holding it is "up to the jury, as the finder of fact, to judge the credibility of the witnesses and to resolve any conflicts in their testimony"). Furthermore, other evidence in the record demonstrates Webb had longer hair than Gaunt during the robbery. Joy Hines testified Webb had a mullet haircut at the time of the robbery and that his hair went down his back. Officer Mann testified the Prices described the gunman as having longer hair than the other robber. Officer Mann further testified Webb's hair was longer than Gaunt's during the robbery. Moreover, in addition to the testimony at trial, the Wal–Mart video showed the different appearances of the suspects. Because the solicitor's argument was supported by evidence in the record, the trial court did not abuse its discretion by allowing his statement.

■ Even assuming the trial court did err in allowing the solicitor's statement regarding the length of Webb's hair, it was harmless error because there was overwhelming evidence of Webb's guilt in evidence. *See State v. Baccus*, 367 S.C. 41, 55, 625 S.E.2d 216, 223 (2006) ("When guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this [c]ourt will not set aside a conviction for insubstantial errors not affecting the result.").

### III. Cross–Examinations of Hines and Mann

Webb argues the trial court erred in not allowing defense counsel to fully cross-examine Hines and Officer Mann regarding the charges against Gaunt. We disagree.

On cross-examination, defense counsel questioned Hines regarding her pending charges and asked her whether Gaunt had already pled to the charges against him. The State objected, arguing Hines was not Gaunt's attorney and would not have knowledge of whether Gaunt had pled. The trial court sustained the objection and informed defense counsel that information was not pertinent to the present inquiry, and he was not going to allow it.

Later, defense counsel cross-examined Officer Mann regarding the disposition of the charges against Gaunt. Officer Mann testified she believed the case was "disposed of," but

she did not know anything about Gaunt's sentence. Defense counsel asked Officer Mann whether during the course of the investigation, she learned from Gaunt that Hines wanted to commit the robberies. Defense counsel then presented Mann with a transcript of her interview with Gaunt. The State objected, arguing Gaunt was not available for cross-examination, and his statement constituted inadmissible hearsay. Defense counsel argued he only wanted to refresh Mann's memory regarding her investigation.

The trial court allowed the cross-examination to continue, and defense counsel asked Mann whether she "learned through the investigation that [Gaunt] says that [Webb] had the billfold?" The State objected, and the trial court stated: "I tell you that if you want that individual to testify, I will make him available to you. I will not permit his testimony through this witness. That is rank hearsay." Defense counsel went on to question Officer Mann about her conversation with Gaunt. The trial court stopped the questioning and informed defense counsel he could not try and get Gaunt's testimony into the record through Officer Mann. Thereafter, the trial court instructed the jury on the hearsay rule and explained why Gaunt's statements were inadmissible.

Webb maintains his right to confront and cross-examine witnesses is essential to due process. He argues the limits placed on Hines' and Officer Mann's testimony regarding Gaunt were prejudicial and prevented him from presenting a complete defense. Webb contends their testimony was significant to his case because there was a reasonable probability that Gaunt was the one with the gun in the hotel room. The State alleges defense counsel failed to object to any limitation of his cross-examinations of Hines and Officer Mann, and thus, Webb's argument is not preserved for review. The State notes defense counsel did not argue at trial the same grounds for allowing his cross-examination of Hines and Officer Mann that Webb now asserts on appeal.

We find Webb's argument is not preserved for our review. Defense counsel did not object to the trial court's limitations on cross-examination, and therefore, Webb's argument is not preserved for our review. *See State v. Blalock*, 357 S.C. 74, 79, 591 S.E.2d 632, 635 (Ct.App.2003) ("In order to preserve

184

an error for appellate review, a defendant must make a contemporaneous objection on a specific ground. The objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial judge."); *see also State v. Mitchell,* 330 S.C. 189, 195, 498 S.E.2d 642, 645 (1998) (holding that where counsel acquiesces in judge's limitation of his cross-examination and makes no further objection, appellate review of the issue is procedurally barred).

## CONCLUSION

Accordingly, the ruling of the trial court is

**AFFIRMED.**