1687

The STATE, Respondent v. Richard THOMPSON, Appellant.

(409 S.E. (2d) 420)

Court of Appeals

*Stephen John Henry*, of *Taylor, Stephenson & Henry*, Greenville, *for appellant*.

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *Amie L. Clifford*, Columbia, and *Sol. Joseph J. Watson*, Greenville, *for respondent*.

Heard March 8, 1991.

Decided Aug. 12, 1991.

BELL, Judge:

The grand jury for Greenville County indicted Richard Thompson on one count of first degree criminal sexual con-

duct. Thompson made pretrial motions to quash the indictment which the circuit judge denied. At trial, the jury convicted Thompson of the offense charged. The court sentenced Thompson to twenty years' imprisonment. Thompson appeals. We affirm.

Viewed in the light most favorable to the State, the evidence established the following facts.

On Wednesday, December 14, 1988, Thompson's natural daughter by his former wife told her great aunt that Thompson had forcibly engaged in sexual intercourse with her on the previous Friday, December 9th, in a motel room in Greenville County. The child was in the custody of her stepfather. Her mother was in jail. At the time of the incident she was ten years old. She had been residing with the great aunt. She was with Thompson for weekend visitation when he raped her.

Upon learning of the incident, the great aunt called a rape crisis intervention center. At the center's direction, she took the child to a local hospital emergency room where a doctor examined her. Later that day, a social worker from the Department of Social Services met with the child.

The next day, the great aunt took the child to the Greenville law enforcement center, where Detective Dorothy Butler conducted a tape recorded interview with the child. The interview was then transcribed and the child signed it. During the interview, the child identified a Budget Inn in Greenville as the scene of the December 9th incident. Some two weeks later the child informed Butler that the incident took place at an Econo Lodge motel, also in Greenville. Butler did not take an additional written statement to reflect this change in the child's story.

Based on the child's written statement and a pediatrician's physical examination, Butler obtained an arrest warrant for Richard Thompson on January 3, 1989. The warrant stated that Thompson was being arrested on a charge of committing criminal sexual conduct with a minor in violation of Section 16-3-655 of the South Carolina Code. It further stated that the offense was committed on December 9, 1988. The affidavit in support of the warrant stated the offense occurred at the Budget Inn on Pendleton Street in the City of Greenville. Thompson does not challenge the affidavit or the warrant.

Thompson was arrested and questioned on January 10, 1989. He denied the offense saying he had never been at the Budget Inn. When Butler later went to investigate the scene, she found no record of Thompson at the Budget Inn, but she did find a receipt at the Econo Lodge showing Thompson had registered there on the night of December 9, 1988.

The child gave the following account at trial. Her father picked her up on weekends for visitation. Several times prior to December 9, 1988, he took her to the Econo Lodge and had sexual intercourse with her. She did not remember the exact dates of these earlier incidents.

On Friday night, December 9th, he picked her up and took her to the Econo Lodge. He went in and registered; then they went to the room. He telephone his girlfriend, Faye. While he was talking on the phone he undressed his daughter. She told him to stop, but he would not listen to her. After he hung up the phone, he took his clothes off, got on top of her, and put his penis in her vagina. She told him to stop, but he would not listen to her. He said if she told anyone he would kill her. He also kissed her, fondled her breasts, and performed oral sex on her. Later, Faye came to the motel room with one of her children. Thomas undressed Faye in front of the two children. He and Faye got in the bed where they spent the night together. The next day Thompson took his daughter to her grandmother's house where she spent the remainder of the weekend. The following Wednesday, her great aunt asked her if someone had been touching her. The child then related what Thompson had done the previous Friday night.

On being asked by counsel why she had not reported any of the previous acts of sexual intercourse, the child indicated she feared her father's threats and thought no one would believe her if she did tell.

The chief pediatric resident of the Greenville Hospital System also testified. He examined the child on December 22, 1988. He found that her vagina had been penetrated and had the appearance of an adult sexually active female. There was no hymen. In his opinion, she had been sexually abused. He said his physical findings were consisted with the history of sexual abuse he had obtained from the child.

## I.

On appeal Thompson first maintains that the circuit court should have quashed the indictment. The argument rests on three grounds.

First, Thompson asserts the indictment did not sufficiently state the location where the alleged offense was committed. Section 17-19-20, S.C. Code Ann. (1976) states:

> Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided.

As to the place the crime was committed, the statute requires only that it be sufficiently alleged so as to lay the jurisdiction of the court and inform the accused of the county in which he is charged with a violation of the law. *State v. McIntire* 221 S.C. 504, 71 S.E. (2d) 410 (1952). The State is not required to plead its evidence in the indictment. *See id.; see also State v. Fleming*, 243 S.C. 265, 133 S.E. (2d) 800 (1963). In this case, the indictment alleged Thompson committed the offense in Greenville County. This was sufficient to satisfy the requirements of the law.

Second, Thompson claims the indictment did not sufficiently allege the time of the offense. Strict common law practice requires an indictment to allege the day of the month and year when the offense was committed. *State v. Brown*, 24 S.C. 224 (1885). This rule still applies in any case where the date is a material element of the offense. *See State v. Rutledge*, 232 S.C. 223, 101 S.E. (2d) 289 (1957). However, under Section 17-19-20, quoted above, if it is not a material element of the offense, the specific date need not be alleged as long as the indictment apprises the defendant of what he must be prepared to meet at trial and describes a time before the date of the indictment itself and one within the period prescribed by any applicable statute of limitations. *See State v.*

*Wingo*, — S.C. —, 403 S.E. (2d) 322 (App. 1991) (holding an indictment alleging commission of first degree criminal sexual assault on a child between July 4 and August 25 is sufficient as to time). The specific date and time is not an element of the offense of first degree criminal sexual conduct. *Id.* In this case, the indictment charged one count of first degree criminal sexual conduct. It alleged the date of the offense was "on or about December 9, 1988." This was sufficient to satisfy the requirements of the law.[1]

Third, Thompson asserts the indictment should be quashed because the State withheld from the grand jury critical evidence that the child gave conflicting statements about the motel where the alleged crime took place. The short answer to this assertion is that there is no evidence in the record to support it. It rests entirely on speculation by counsel. It does not follow, as Thompson argues, that simply because the grand jury returned a true bill, simply because the indictment does not mention either of the two motels, and simply because the State's chief witness before the grand jury was Detective Butler—that simply because of these things—we must presume the State abused the grand jury process in order to obtain a finding of probable cause to prosecute. After all, this same "conflict" about the two motels was thoroughly explored at trial before a jury that found Thompson guilty beyond a reasonable doubt, a standard much higher than probable cause.

Proceedings before the grand jury are presumed to be regular unless there is clear evidence to the contrary. *Cf. State v. Griffin*, 277 S.C. 193, 285 S.E. (2d) 631 (1981) (in absence of evidence grand jurors were not sworn, Court held a presumption exists that grand jurors were sworn

---

[1] The videlicet in the charging clause of Thompson's indictment recites as a particular. "Defendant has had sexual intercourse with his natural daughter on several occassions" [sic]. The phrase "on several occasions" is mere surplusage which does not alter the nature of the offense charged. A common sense reading of the indictment as a whole shows that it charges the defendant with a single count of criminal sexual conduct allegedly committed on December 9, 1988. Surplusage will not vitiate an indictment which, without regard to the surplusage, is sufficient to charge the offense for which the defendant is being indicted. *State v. Alexander*, 140 S.C. 325, 138 S.E. 835 (1927); *State v. Williams*, 295 N.C. 655, 249 S.E. (2d) 709 (1978). Here, the indictment is sufficient without the surplusage.

and, thus, upheld the indictment). Speculation about "potential" abuse of grand jury proceedings cannot substitute for evidence of *actual* abuse as grounds for quashing an otherwise lawful indictment. In saying this, we yield to no one in our zeal to insure that the grand jury continues to perform its historic function as a shield between the accused and abuse of the prosecutorial power of the State. The courts of South Carolina stand guard to see that the grand jury is not reduced to a "mere plaything of prosecutors." *State v. Capps,* 276 S.C. 59, 67, 275 S.E. (2d) 872, 875 (1981) (Lewis, C.J., dissenting).

## II.

Thompson next argues that the trial judge should have admitted into evidence the tape recorded statement the child made on December 15, 1988, or its transcription. He claims the jury should have been allowed to hear or see the child's out of court statement so they could compare it to her testimony at trial.

The admission and exclusion of evidence is largely a matter of trial judge discretion and his rulings will not be overturned on appeal unless he manifestly abuses his discretion and the defendant suffered prejudice as a result. *See State v. Groome,* 274 S.C. 189, 262 S.E. (2d) 31 (1980); *State v. Johnson,* 271 S.C. 485, 248 S.E. (2d) 313 (1978).

In this case, the child's testimony in court contained additional details not given in her out of court statement. She also testified that the crime took place at the Econo Lodge, not the Budget Inn as she stated in her initial pretrial interview with Butler. The differences between her testimony and the prior statement were thoroughly explored by the State and the defense at trial. The judge permitted defense counsel to conduct a free and searching cross examination of the child. After examining the record in detail, we find no variance in the child's sworn testimony and her pretrial statement that was not brought out to the jury at trial. Moreover, witnesses for the defense contradicted all the material elements of the child's story when they testified. The jury had all of this evidence before it. Although the child told somewhat different versions of what happened in her statements to the police and at trial, except for the identification of the motel, there was no real inconsistency in her accounts of her

father's conduct. The jury was entitled to take into consideration the circumstances of the crime and the age and demeanor of the child when evaluating the variances that did exist. *See State v. Hale*, 284 S.C. 348, 326 S.E. (2d) 418 (Ct. App. 1985), *cert. denied*, 286 S.C. 127, 332 S.E. (2d) 533 (1985).

We hold the judge acted within the scope of his discretion in excluding the evidence. There was no discernible prejudice to Thompson from the exclusion of this evidence. It covered matters already placed before the jury through witness testimony. Moreover, there was ample evidence, including certain inculpatory admissions by Thompson himself, to support the jury's finding of guilt beyond a reasonable doubt. We find no error.

### III.

On cross examination, the trial judge permitted the prosecutor, over objection, to question Thompson about a prior family court conviction for failing to pay child support for his daughter. Thompson admitted he had been sentenced for failure to pay support. On appeal he excepts to the admission of this evidence.

During the presentation of his case, Thompson introduced evidence to persuade the jury of his good character. Among other things, he called his supervisor at work to testify that he was a good worker and a "good man." Thompson himself also testified that he would never engage in sexual intercourse with his daughter, that he had "never in my life" been arrested, and that he had never been convicted of any crime. His lawyer stated on the record in front of the jury that he was putting Thompson's character in evidence. Thompson's case was obviously calculated to show the jury he was a good, reliable, law abiding person who would not have sex with a child.

In these circumstances, the State was permitted to impeach Thompson's good character by showing his prior failure to support his daughter and his resulting conviction in family court. The questions asked were within the bounds of permissible enquiry. If the defendant places his character in issue, the State may impeach his character on cross examination. *See State v. Allen*, 266 S.C. 468, 224 S.E. (2d) 881 (1976). The exception lacks merit.

For the reasons stated, the judgment is

Affirmed.

GARDNER and SHAW, JJ., concur.

