702 S.E.2d 395

**The STATE, Respondent,**

v.

**Waltroric U. MOSES, Appellant.**

**No. 4758.**

Court of Appeals of South Carolina.

Heard Sept. 15, 2010.

Decided Nov. 5, 2010.

Rehearing Denied Dec. 20, 2010.

---

506

Appellate Defender M. Celia Robinson, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Julie M. Thames, all of Columbia; Robert Mills Ariail, of Greenville, for Respondent.

PIEPER, J.

Waltroric U. Moses appeals his conviction for assault and battery of a high and aggravated nature (ABHAN) and sentence pursuant to the Youthful Offender Act. On appeal, Moses argues the trial court erred in: (1) ruling his statement was voluntarily made; (2) refusing to dismiss the charges due to the State's destruction of and failure to disclose videotaped evidence; (3) refusing to grant the motion to quash the indictments; and (4) admitting statements by a witness under Rule 613, SCRE, as prior inconsistent statements. We affirm.

## FACTS/PROCEDURAL HISTORY

On September 28, 2006, Moses, a special education student at Hillcrest High School, was involved in a physical altercation with a school police officer. The altercation took place during a lunch period when Moses went to the cafeteria to wish a cafeteria worker happy birthday. Moses walked towards a lunch line being monitored by a biology teacher, Brian Carl. As Moses approached, Carl told him not to cut in line. Moses did not respond and Carl followed him, indicating that Moses had to go to the end of the line. Moses continued to ignore Carl and proceeded through the lunch line. After tugging on Moses' backpack, Carl repeated for a third time that Moses could not cut in line. Refusing to cooperate, Moses told Carl not to touch him and that he better get away from him. Consequently, in accordance with school procedure, Carl took Moses' identification badge from his backpack and asked Officer Morris Madden, the school resource officer, to handle the situation with Moses.

Thereafter, Moses walked behind Carl to the administrator's table to retrieve his badge. When Moses walked back

toward the lunch line, Carl turned around and put his hand on Moses' shoulder. Moses responded by raising his hand up and stating, "don't f——ing touch me." When Madden saw Moses raise his hand, Madden stood up, grabbed Moses by the hand, and told him to sit down at the administrator's table. Instead of sitting down, Moses "pushed" his chair toward Madden and told Madden to get off of him. Moses then pushed Madden. Moses started to walk away and Madden caught up with him and attempted to place him under arrest. When Madden attempted to grab Moses and arrest him, Moses turned around, shoved Madden with both hands, and told him, "get the f——k away."

After Moses pushed Madden a second time, Madden attempted to push Moses to the ground in order to gain control of him. However, Madden was unable to keep Moses down. Once Moses was able to stand up, he grabbed Madden around his waist and pushed him backwards. Madden used his arms to come underneath Moses' grip and then punched him. Moses then punched Madden in the left temple area of his head, knocking off his glasses. As a result, Madden suffered multiple facial fractures.

Moses immediately ran out of the cafeteria and exited the building while Madden and Officer Matthew Smith followed him. Smith asked Moses to stop. Moses finally stopped and told Smith to keep Madden away from him. Smith placed Moses into custody and transported him to the Simpsonville Police Department. At the police department, Smith took Moses into the squad room where he removed Moses' handcuffs. Smith read Moses his rights verbatim from the "Waiver of Rights" form and asked Moses if he understood his *Miranda*[1] rights. Moses replied that he understood his rights and signed the waiver. Smith then took Moses' written statement by writing down everything Moses said.

Moses was indicted for ABHAN, malicious injury to personal property, and disturbing schools. The case proceeded to trial in Greenville County on October 29, 2007. Following jury selection, the court denied the defense's pretrial motions

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

relating to a *Brady*[2] violation involving production of the school's surveillance tapes, the voluntariness of Moses' statement, and the alleged irregularity of grand jury proceedings. At trial, the court also overruled two evidentiary objections by defense counsel on the basis of hearsay and relevance.

The trial court granted a directed verdict on the indictment for malicious injury to personal property, finding no evidence of intent. The jury found Moses guilty of ABHAN, but not guilty of disturbing schools. The court sentenced Moses to incarceration for a period not to exceed six years, which is the maximum sentence for ABHAN under the Youthful Offender Act. This appeal followed.

## ISSUES ON APPEAL

(1) Did the trial court err in ruling that Moses' custodial statement was admissible as voluntarily made?

(2) Did the trial court err in refusing to dismiss the charges against Moses as the result of the State's alleged destruction of and failure to preserve or disclose videotaped evidence?

(3) Did the trial court err in refusing to grant the motion to quash the indictments?

(4) Did the trial court err in admitting as substantive evidence prior statements made by a defense witness under the theory that the statements were admissible as prior inconsistent statements under Rule 613, SCRE, and did the court err in denying the motion to strike when the State's witness referenced Moses' prior bad act of assaulting a teacher?

## STANDARD OF REVIEW

In criminal cases, the appellate court only reviews errors of law and is bound by the trial court's factual findings unless the findings are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220(2006). "On appeal, the trial judge's ruling as to the voluntariness of the confession will not be disturbed unless so erroneous as to constitute an abuse of

---

**2.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

discretion." *State v. Myers,* 359 S.C. 40, 47, 596 S.E.2d 488, 492 (2004). Likewise, rulings on the admission of evidence are within the trial court's discretion and will not be reversed absent an abuse of discretion. *State v. Stokes,* 381 S.C. 390, 398, 673 S.E.2d 434, 438 (2009).

## LAW/ANALYSIS

Moses first argues the trial court erred in failing to suppress Moses' custodial statement on the ground the statement was not knowingly or voluntarily given. Moses argues that under the totality of the circumstances, the statement, taken from a learning-disabled student, unaccompanied by his parents, was improperly admitted into evidence. However, because defense counsel failed to make a contemporaneous objection, this issue is not preserved for our review. "[M]aking a motion *in limine* to exclude evidence at the beginning of trial does not preserve an issue for review because a motion *in limine* is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced." *State v. Forrester,* 343 S.C. 637, 642, 541 S.E.2d 837, 840(2001). Notwithstanding, if the court makes a ruling on the admission of evidence *immediately prior* to the evidence at issue being introduced at trial, then the aggrieved party need not renew the original objection. *Id.* (emphasis added). Here, Moses does not meet the exception to the rule because the evidence was not immediately introduced following the court's ruling at the pretrial hearing. Thus, it was necessary for defense counsel to renew her objection to the introduction of Moses' custodial statement in order to preserve the issue for appellate review.

Moreover, the record supports the trial court's ruling that Moses' statement was freely, knowingly, and voluntarily made. In *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the United States Supreme Court indicated "that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." 378 U.S. at 376, 84 S.Ct. 1774. Accordingly, a defendant has the right to object to the use of the confession and to have a fair hearing and a reliable

512

determination on the issue of voluntariness. *Id.* at 376–77, 84 S.Ct. 1774. In order to introduce into evidence a confession arising from custodial interrogation,[3] the State must prove by a preponderance of the evidence that the statement was made freely and voluntarily, and taken in compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *State v. Goodwin,* 384 S.C. 588, 601, 683 S.E.2d 500, 507 (Ct.App.2009); *State v. Miller,* 375 S.C. 370, 378, 652 S.E.2d 444, 448 (Ct.App.2007).[4]

 "The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis v. Thompkins,* —— U.S. ——, ——, 130 S.Ct. 2250, 2261, 176 L.Ed.2d 1098 (2010). Both of these *Miranda* rights protect the privilege against compulsory self-incrimination. *Id.* at 2260. The United States Supreme Court has now recognized there is no principled reason to adopt differing standards for determining when an accused has "invoked" the right to remain silent or "invoked" the right to counsel. *See id.* As such, a suspect must "invoke" these rights "unambiguously." *See id.* "A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoid[s] difficulties of proof and ... provide[s] guidance to officers on how to proceed in the face of ambiguity." *Id.* (internal quotation marks and citation omitted). Otherwise, "[i]f an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'" *Id.* (quoting *Davis v. United States,* 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)). Suppression under these circumstances would place a "significant burden on society's interest in prosecuting criminal activity." *Id.*

 Here, Moses did not unambiguously "invoke" his right to remain silent or his right to counsel. Additionally, Moses

3. Custodial interrogation is not in dispute herein.

4. Once introduced, the State must prove to the jury (or fact finder) beyond a reasonable doubt that the statement was freely, knowingly, and voluntarily made. *State v. Simmons,* 384 S.C. 145, 162, 682 S.E.2d 19, 28 (Ct.App.2009); *Goodwin,* 384 S.C. at 602, 683 S.E.2d at 507.

has not challenged on appeal his right to counsel; thus, we need only consider whether Moses "waived" his right to remain silent due to his assertion that his statement was not freely and voluntarily given. *See Berghuis,* 130 S.Ct. at 2260 ("Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [*Miranda*] rights when making the statement.") (internal quotation marks and citation omitted). The Supreme Court has indicated two dimensions to this waiver inquiry: (1) the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and (2) the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). As both the United States Supreme Court and our state supreme court have indicated, the prosecution need not show that a waiver of *Miranda* was express. *Berghuis,* 130 S.Ct. at 2261; *State v. Kennedy,* 333 S.C. 426, 429, 510 S.E.2d 714, 715 (1998) ("An express waiver is unnecessary to support a finding that the defendant has waived the right to remain silent or the right to counsel guaranteed by *Miranda.*" (citing *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286(1979))). An implicit waiver is sufficient. *Id.* Regardless of whether the waiver is express or implied, the waiver must be given freely, knowingly, and voluntarily. Accordingly, we must assess Moses' waiver under this standard.

In South Carolina, the test for determining whether a defendant's confession was given freely, knowingly, and voluntarily focuses upon whether the defendant's will was overborne by the totality of the circumstances surrounding the confession. *See Goodwin,* 384 S.C. at 601, 683 S.E.2d at 507 (citing *Dickerson v. United States,* 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)). Courts have recognized appropriate factors that may be considered in a totality of the circumstances analysis: background; experience; conduct of the accused; age; maturity; physical condition and mental health; length of custody or detention; police misrepresenta-

tions; isolation of a minor from his or her parent; the lack of any advice to the accused of his constitutional rights; threats of violence; direct or indirect promises, however slight; lack of education or low intelligence; repeated and prolonged nature of the questioning; exertion of improper influence; and the use of physical punishment, such as the deprivation of food or sleep. *See, e.g., Withrow v. Williams,* 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (length of interrogation, location, continuity, and defendant's maturity, physical condition, education, and mental health); *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (noting the following factors as relevant: age, education, advice of constitutional rights, length of detention, repeated and prolonged nature of questioning, and use of physical punishment such as deprivation of food or sleep); *Goodwin,* 384 S.C. at 601, 683 S.E.2d at 507 (police coercion, length of interrogation, its location, continuity, and defendant's maturity, education, physical condition, and mental health); *Simmons,* 384 S.C. at 163–64, 682 S.E.2d at 28–29 (awareness of constitutional rights, coercion, hunger, promise of leniency); *State v. Dye,* 384 S.C. 42, 47–48, 681 S.E.2d 23, 26–27 (Ct.App. 2009) (defendant's awareness of rights, coercion, environment, education); *State v. Parker,* 381 S.C. 68, 85–93, 671 S.E.2d 619, 627–32 (Ct.App.2008) (age, education, physical and mental state of defendant, misrepresentations of evidence by police, coercion, effect of juvenile's request for parent and advice of parent); *Miller,* 375 S.C. at 384–86, 652 S.E.2d at 451–52 (direct or implied promise of leniency). This list of factors is not an exclusive list. *See Withrow,* 507 U.S. at 693–94, 113 S.Ct. 1745. Moreover, no single factor is dispositive and each case requires careful scrutiny of all surrounding circumstances. *Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. 2041; *State v. Pittman,* 373 S.C. 527, 566, 647 S.E.2d 144, 164 (2007).

Here, Smith testified during the hearing that only he and Moses were present during his interview, although he acknowledged that several officers walked in and out of the room. The record does not indicate Moses was threatened by Smith. Rather, Smith, aware that Moses was seventeen years old and enrolled in special education classes, took the time to write Moses' statement himself after reading each line of the "Waiver of Rights" form to Moses, who then signed the form.

Additionally, Moses testified on two separate occasions that he understood his *Miranda* rights. He further testified that Smith did not tell him what to say during his statement. The record does not indicate that Moses was detained for an extended period of time. Finally, although Moses could only read and write at a third grade level, he was able to earn an occupational diploma. Although the trial court failed to specifically mention his mother's alleged request to be present during questioning, we find that factor standing alone is not dispositive. Ultimately, upon review of the totality of the circumstances in this case, the record supports the trial court's conclusion that Moses' statement was freely, knowingly, and voluntarily made, regardless of his age, learning disability, and separation from his mother. Thus, we find no abuse of discretion by the trial court.

Next, Moses argues the trial court erred in refusing to dismiss the charges due to the failure of the State to preserve or disclose videotaped evidence from the incident in the cafeteria which would have been helpful to Moses in identifying student witnesses. Because of his expulsion, Moses was not allowed to go back to the school to look for student witnesses who were in the cafeteria at the time of the incident. If he had been presented with the entire surveillance recording, defense counsel asserts he may have been able to locate, interview, and present favorable testimony from student witnesses.

The State's duty to disclose evidence favorable to the defendant is addressed by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "The suppression by the [State] of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. In South Carolina, an individual asserting a *Brady* violation must demonstrate that the evidence: (1) was favorable to the accused; (2) was in the possession of or known by the prosecution; (3) was suppressed by the State; and (4) was material to the accused's guilt or innocence or was impeaching.[5] *Riddle v. Ozmint,* 369 S.C. 39, 44, 631 S.E.2d 70, 73 (2006); *State v.*

---

5. Likewise, under Rule 5, SCRCrimP, defendants, upon request, are entitled to disclosure of their statements, criminal records, and any documents or tangible objects material to the preparation of their

*Carlson*, 363 S.C. 586, 609, 611 S.E.2d 283, 295 (Ct.App.2005). The court in *Riddle* recognized the United States Supreme Court's emphasis on the prosecutor's responsibility for fair play. *Riddle*, 369 S.C. at 46, 631 S.E.2d at 74. In describing this responsibility, the court stated:

> The prudent prosecutor will resolve doubtful questions in favor of disclosure. This is as it should be. Such disclosures will serve to justify trust in the prosecutor as the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done. And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations.

*Id.* (internal quotation marks and citation omitted). As such, it is imperative for prosecutors to abide by this rule as "[o]ur judicial system relies upon the integrity of the participants." *Id.* Whether the prosecutor's failure to reveal evidence pursuant to *Brady* is due to negligence or an intentional act is irrelevant because a court may find a *Brady* violation regardless of the good or bad faith of the prosecutor. *Gibson v. State*, 334 S.C. 515, 528, 514 S.E.2d 320, 327 (1999). Because *Brady* is founded upon a sense of fairness and justice, the focus in a *Brady* analysis should not be on the misconduct of the prosecutor, but rather on the fairness of the procedure. *Id.* As noted in *Brady*, "[t]he principle ... is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair[.]" *Id.* (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). "If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

▆▆▆▆▆ Generally, "[t]here are three categories of *Brady* violations: (1) cases involving nondisclosed evidence or per-

---

defense or intended for use by the prosecution. Rule 5(a)(1), SCRCrimP. For purposes of Rule 5, "material" is used in the same context as it is in a *Brady* analysis. *State v. Kennerly*, 331 S.C. 442, 453, 503 S.E.2d 214, 220 (Ct.App.1998). Once there is a Rule 5 violation, a court will only reverse "where the defendant suffered prejudice as a result of the violation." *Id.* 331 S.C. at 453–54, 503 S.E.2d at 220.

jured testimony about which the prosecutor knew or should have known; (2) cases in which the defendant specifically requested the nondisclosed evidence; and (3) cases in which the defendant made no request or only a general request for *Brady* material." *Carlson,* 363 S.C. at 609, 611 S.E.2d at 295. Evidence considered favorable to the defendant includes both exculpatory and impeachment evidence and extends to evidence that is not in the actual possession of the prosecution, but also to evidence known by others acting on the government's behalf, including the police. *Kennerly,* 331 S.C. at 452–53, 503 S.E.2d at 220. Moreover, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *accord Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *see also Riddle,* 369 S.C. at 45, 631 S.E.2d at 73 ("The question is not whether petitioner would more likely have been acquitted had this evidence been disclosed, but whether, without this impeachment evidence, he received a fair trial 'resulting in a verdict worthy of confidence.' " (quoting *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555)); *State v. Hill,* 368 S.C. 649, 661, 630 S.E.2d 274, 280–81(2006) (stating evidence is material if the cumulative effect of the suppressed evidence results in a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different); *Fradella v. Town of Mount Pleasant,* 325 S.C. 469, 479, 482 S.E.2d 53, 58 (Ct.App.1997) ("A defendant shows a *Brady* violation by demonstrating that 'favorable evidence could [have been presented] to put the whole case in such a different light as to undermine confidence in the verdict.' "). Evidence is not considered "material" if the defense discovers the information in time to adequately use it at trial. *Kennerly,* 331 S.C. at 453, 503 S.E.2d at 220; *Sheppard v. State,* 357 S.C. 646, 660, 594 S.E.2d 462, 470 (2004) (finding no *Brady* violation when defense counsel was given witness's statements in time for cross-examination, and, thus, there was not a reasonable probability the outcome of the trial would have been different had the statements been disclosed prior to trial).[6]

---

6. Although this case involved a trial, the *Brady* standard is also applicable to guilty plea cases. *See Gibson,* 334 S.C. at 525, 514 S.E.2d at 325

■ While *Brady* imposes a duty on the State to *disclose* material evidence favorable to the defendant, the State has the additional duty, albeit not an absolute duty, to *preserve* evidence that is favorable to the defendant. Although under *Brady* the good or bad faith of the State is irrelevant when the State fails to disclose material, exculpatory evidence, the United States Supreme Court has clarified that a different analysis is required when the State fails to preserve evidence that *might* have exonerated the defendant. In *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Court explained the reason for this difference:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

488 U.S. at 58, 109 S.Ct. 333.

South Carolina has adopted the duty to preserve analysis of *Arizona v. Youngblood* in its jurisprudence. While recognizing that the State does not possess an absolute duty to preserve potentially useful evidence, our state supreme court has held that a defendant must demonstrate either that the State destroyed evidence in bad faith, or the state destroyed evidence that possessed an exculpatory value that is apparent before the evidence was destroyed and the defendant cannot obtain other evidence of comparable value by other means. *State v. Mabe*, 306 S.C. 355, 358–59, 412 S.E.2d 386, 388 (1991); *see also State v. Cheeseboro*, 346 S.C. 526, 538, 552 S.E.2d 300, 307 (2001) (finding "[t]he State does not have an absolute duty to preserve potentially useful evidence that

---

(adopting essentially the same standard that is applied in the context of a trial: "A *Brady* violation is material when there is a reasonable probability that, but for the government's failure to disclose *Brady* evidence, the defendant would have refused to plead guilty and gone to trial.").

*might* exonerate a defendant.") (emphasis added); *State v. Singleton,* 319 S.C. 312, 317, 460 S.E.2d 573, 576 (1995) ("[I]f the evidence possesses exculpatory value that is apparent before its destruction, its disposal constitutes a denial of due process." (citing *Youngblood,* 488 U.S. at 56 n. 3, 109 S.Ct. 333)).

In this case, defense counsel failed to establish a due process violation resulting from the intentional destruction of, or failure to preserve, relevant evidence. The record fails to establish bad faith on Smith's part. The State argued to the trial court during pretrial motions that the surveillance system in place at Hillcrest High School was very antiquated and only captured still images, not live video. As the State further explained, a live video could not be obtained from the surveillance system because it is a delayed still image process. Instead, if not yet automatically deleted, delayed pictures could be obtained, such as the one produced by Smith to defense counsel. Further, the solicitor indicated to the trial court that she had given a hard copy of the picture and a copy of the disk to defense counsel; this statement was not contested at the time made. The State also invited the defense expert to Hillcrest High School to examine the surveillance system. Thus, based on the information provided, the record supports the trial court's finding that the State did not destroy any evidence in bad faith.[7]

Furthermore, the testimony of record fails to establish the exculpatory value of this evidence. The defense asserts the tape "would most likely" have allowed it to identify witnesses who *may reasonably* have presented favorable evidence or evidence which could have lead the defense to impeachment evidence. Standing alone, this assertion is insufficient. Moreover, Moses failed to show that he could not obtain other evidence of comparable value by other means; in fact, the State provided defense counsel with a high school yearbook to help Moses in identifying other witnesses who were present in the cafeteria. *See, e.g., United States v. Wilson,* 901 F.2d 378, 381 (4th Cir.1990) (finding no *Brady* violation when exculpato-

---

**7.** Although defense counsel suggested that others had mentioned the "alleged" video, the defense never proffered that testimony for the record.

ry information was not only available to the defendant, but also available in a source where a reasonable defendant would have looked); *see also Cheeseboro,* 346 S.C. at 538–39, 552 S.E.2d at 307 ("To establish a due process violation, a defendant must demonstrate (1) that the State destroyed the evidence in bad faith, or (2) that the evidence possessed an exculpatory value apparent before the evidence was destroyed and the defendant cannot obtain other evidence of comparable value by other means."); *Mabe,* 306 S.C. at 358–59, 412 S.E.2d at 388 ("A defendant must demonstrate either that the state destroyed evidence in bad faith, or that the state destroyed evidence that possessed an exculpatory value that is apparent before the evidence was destroyed and the defendant cannot obtain other evidence of comparable value by other means."). Accordingly, we find no reversible error in the trial court's denial of Moses' motion to dismiss the case based on the alleged destruction of relevant evidence.

▇▇▇ Moses next asserts on appeal that the trial court erred in refusing to grant the motion to quash the indictments on the ground the grand jury process followed in this case violated due process and constitutional guarantees. Moses asserts that the Greenville County Grand Jury returned over four hundred indictments on the day the indictments against him were returned; thus, he argues that the devotion of only two minutes per indictment constituted evidence that the grand jury proceedings were not regular. We disagree.

▇▇▇ "A grand jury is not a prosecutor's plaything and the awesome power of the State should not be abused but should be used deliberately, not in haste." *State v. Capps,* 276 S.C. 59, 61, 275 S.E.2d 872, 873 (1981). Grand jury proceedings are presumed to be regular unless clear evidence indicates otherwise. *State v. Thompson,* 305 S.C. 496, 501, 409 S.E.2d 420, 424 (Ct.App.1991). Any speculation regarding "potential" abuse of grand jury proceedings cannot suffice as evidence of "actual" abuse in order to quash an indictment. *Id.* at 502, 409 S.E.2d at 424.

In *State v. Duncan,* 274 S.C. 379, 264 S.E.2d 421 (1980), the court dealt with a strikingly similar issue. The defendant appealed his conviction for murder and argued, among several other grounds, that the trial court erred in failing to quash his

indictment. 274 S.C. at 380, 264 S.E.2d at 422. At trial, Duncan's motion to quash the indictment was based entirely on the number of indictments returned by the grand jury on the day his indictment was returned, arguing it was impossible for the grand jury to have had enough time to weigh the evidence presented against him. *Id.* at 380–81, 264 S.E.2d at 422. The supreme court affirmed the trial court's decision to deny the motion, holding that the Fifth Amendment only requires the indictment to be returned by an unbiased jury and to be valid on its face. *Id.* at 381, 264 S.E.2d at 422. Moreover, the court stated the time spent deliberating a matter does not control the effectiveness of the indictment. *Id.*

Similar to the argument made in *Duncan,* Moses' argument is based on the number of indictments returned on a single day. Here, Moses asserts that all three indictments should be quashed because the grand jury processed 418 indictments on the day it returned his indictments. At trial, Moses argued that based on the number of indictments returned that day, the grand jury would have processed one indictment every 2.3 minutes, not allowing much time and consideration for the volume of evidence presented in this case. Although the court in *Duncan* never mentioned the number of indictments returned that day, the court stated, "[t]he length of time spent deliberating a matter, even if it could be established, does not control the effectiveness of the deliberation." *Id.* at 381, 264 S.E.2d at 422. Furthermore, this evidence is not clear evidence of any *actual* abuse justifying the quashing of the indictments but rather, it is tantamount to mere speculation regarding *potential* abuse. *See Thompson,* 305 S.C. at 502, 409 S.E.2d at 424. In addition, the average time suggested herein by Moses discounts the equal possibility that the grand jury spent more time on some cases and less on others. Accordingly, without direct evidence, which we acknowledge is difficult to provide due to the secretive nature of the grand jury proceedings, Moses failed to demonstrate irregular grand juror proceedings. Thus, we find no reversible error in the trial court's denial of the motion to quash the indictments.

Turning to the next issue on appeal, Moses argues the trial court erred in admitting statements made by Amy Gahagan, Moses' teacher, as prior inconsistent statements under

Rule 613, SCRE. He argues that no foundation was made for the introduction of the statements and, further, that the court erred in denying the defense motion to strike when the State's witness referenced Moses' assault of a teacher. We disagree.

According to Rule 613, SCRE:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made, and is given the opportunity to explain or deny the statement. If a witness does not admit that he has made the prior inconsistent statement, extrinsic evidence of such statement is admissible. However, if a witness admits making the prior statement, extrinsic evidence that the prior statement was made is inadmissible. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

Rule 613(b), SCRE. "A prior inconsistent statement may be admitted as substantive evidence when the declarant testifies at trial and is subject to cross-examination." *State v. Stokes*, 381 S.C. 390, 398–99, 673 S.E.2d 434, 438 (2009). Unlike the federal rule, the South Carolina rule requires that a proper foundation must be laid before admitting a prior inconsistent statement. *State v. McLeod*, 362 S.C. 73, 81, 606 S.E.2d 215, 219 (Ct.App.2004). Thus, "[i]t is mandatory that a witness be permitted to admit, deny, or explain a prior inconsistent statement." *Id.*

The trial court did not err in allowing Coach Robert Searfoss to testify regarding Gahagan's prior inconsistent statement. "Generally, where the witness has responded with anything less than an unequivocal admission, trial courts have been granted wide latitude to allow extrinsic evidence proving the statement." *State v. Blalock*, 357 S.C. 74, 80, 591 S.E.2d 632, 636 (Ct.App.2003); *see also State v. Carmack*, 388 S.C. 190, 201–02, 694 S.E.2d 224, 230 (Ct.App.2010) (holding witness did not unequivocally admit making a prior inconsistent statement; therefore, the trial court did not abuse its discretion in allowing extrinsic evidence of the statement). This wide latitude extends to a witness indicating an inability to recall or to remember a previous statement:

If the witness neither directly admit[s] nor den[ies] the act or declaration, as when he merely says that he does not

recollect, or, as it seems, gives any other indirect answer not amounting to an admission, it is competent for the adversary to prove the affirmative, for otherwise the witness might in every such case exclude evidence of what he had done or said by answering that he did not remember. *Blalock*, 357 S.C. at 80, 591 S.E.2d at 636 (quoting *State v. Sullivan*, 43 S.C. 205, 211, 21 S.E. 4, 7 (1895)). Here, the proper foundation was laid for the admission of Gahagan's inconsistent statement. Gahagan's testimony was not an unequivocal admission. She merely stated she could not remember having asked Searfoss in the fall of 2006 to take Moses into his classroom. Gahagan was advised by the State of the substance of the statement she made to Searfoss, the time and place it was allegedly made, the person to whom it was made, and she was given the opportunity to explain or deny the statement. *See* Rule 613(b), SCRE. Moreover, the State even rephrased the question to Gahagan to allow her a sufficient opportunity to explain or deny the statement. We find no abuse of discretion by the trial court.

 Moses also argues the trial court improperly denied the defense motion to strike Searfoss's testimony regarding Moses' prior assault in Laurens County. During his testimony, Searfoss stated, "Mrs. Gahagan told me that Walt could be confrontational at times. And one of the reasons he was at Hillcrest now is because he assaulted a teacher at Laurens High School...." Defense counsel objected to the statement on the ground of relevance and moved to strike the statement. The trial court instructed the jury as follows: "[t]he comment about Laurens [referring to the assault on a teacher] is not admissible. You should disregard that." The court further instructed the jury that the previous statement regarding what Gahagan told Searfoss should only be used to evaluate the credibility of Gahagan. According to the court's statement to the jury to disregard the testimony regarding the Laurens County incident, the trial court in effect granted the motion to strike. We do not think the semantics of the court's ruling prejudiced Moses or affected the outcome of the trial. Instead, the defendant's procedural objective of the motion to strike achieved the remedy of the court directing the jury to disregard the testimony:

The general rule is indisputably established that, when in the course of a trial incompetent statements of witnesses

are brought in either from accident, or when they might be reasonably, though erroneously, thought by counsel to be competent, the only remedy that the court can afford is to grant a motion to strike out and instruct the jury to disregard the testimony. The injury resulting from the jury having heard the incompetent statement is regrettable, but the trial cannot be stopped because of such accidents and mistakes liable to occur in every trial.

*Keller v. Pearce–Young–Angel Co.*, 253 S.C. 395, 399, 171 S.E.2d 352, 354 (1969). Thus, we find no prejudicial, reversible error as to this issue.[8]

## CONCLUSION

Based on the foregoing, the trial court's decision is **AFFIRMED.**

WILLIAMS and KONDUROS, JJ., concur.

---

8. Moses further asserts the trial court erred in allowing the State to offer general evidence of Moses' bad character on the ground the defense opened the door to the evidence by presenting positive evidence of Moses' work habits, his disability, and the fact he had passed a drug test. While this argument appears in Moses' brief, we note it is not mentioned in the issues on appeal. "Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal." Rule 208(b)(1)(B), SCACR. Moreover, the argument advanced in the brief makes no reference to any supporting authority. *See State v. Howard*, 384 S.C. 212, 217, 682 S.E.2d 42, 45 (Ct.App.2009) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."). Accordingly, we need not reach the merits of this argument.