**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Diontrae Travon Epps, Appellant.

Appellate Case No. 2023-001586

———————————

Appeal From Sumter County
R. Kirk Griffin, Circuit Court Judge

———————————

Unpublished Opinion No. 2026-UP-177
Submitted February 6, 2026 – Filed April 22, 2026

———————————

**AFFIRMED**

———————————

Dayne C. Phillips, of Price Benowitz LLP, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Melody Jane Brown, both of Columbia, for Respondent.

———————————

**PER CURIAM:** Diontrae Epps appeals his convictions for murder and possession of a weapon during the commission of a violent crime. On appeal, he argues the trial court erred by denying his motion to dismiss and granting the State's motion for a continuance to investigate a possible failure to disclose exculpatory evidence.

He also argues the court erred by admitting a Facebook video into evidence because it was not disclosed timely, was improperly authenticated, and created unfair prejudice by presenting his statements on the video out of context. We affirm.

## FACTS/PROCEDURAL HISTORY

Epps was convicted of the murder of Michael "Killa Mike" Rogers during a shootout at a Sunoco gas station in Sumter on September 8, 2019.

Epps's trial was originally scheduled for August 14, 2023. However, that morning Epps, via his attorney, alerted the trial court that he had been made aware of the existence of "potential exculpatory information that may have been garnered from the federal government" that was not provided to the defense. Additionally, Epps's attorney asserted that his associates reviewed the solicitor's file in preparation for trial and discovered a "litany of information" and documents that had never been turned over to them, including the Facebook video, which they received on the Friday morning prior to trial. The State requested a continuance so that it could investigate the discovery issue. Epps asserted that he did not want a continuance and he was prepared to proceed with trial that day as scheduled. The trial court granted the State's continuance request, noting "justice require[d] the case be continued to afford the parties [an] opportunity to investigate these issues and determine whether any of this information [wa]s valid," and if so, what the appropriate next steps should be.

The trial resumed on September 25, 2023.[1] Epps brought a motion to dismiss for prosecutorial misconduct based on *Brady*[2] violations. He again raised the issue of potential discovery violations that precipitated the August 14 continuance— specifically, a statement given to federal authorities which he asserted "would help toward [Epps's] defense of self-defense." Epps also raised concerns about additional discovery that was turned over during the continuance period and reasserted that the Facebook video, as well as other evidence, was belatedly disclosed the Friday prior to the original trial date.

Epps then called a series of witnesses in support of his motion. Cameron Blazer testified that she previously represented a man named Tyrell Billups who had been

---

[1] The same judge presided over both the August 14 hearing and the trial in September.
[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

arrested in Sumter for trafficking Fentanyl. She explained that Billups had given statements to federal investigators regarding the Sunoco shootout in April and May 2022 in an attempt to earn sentencing credit in his federal drug matter. Billups told federal investigators that he had seen the shooting, that Rogers was involved in a confrontation with Epps, and Rogers pulled a gun and tried to shoot, but his gun jammed. Blazer asserted that the federal prosecutor notified the solicitor's office of Billups's statement. However, Blazer acknowledged that *she* also informed Epps's counsel, in the spring of 2022, that her client had given favorable information for Epps regarding the Sunoco shooting, but he was not particularly interested because he "had a good defense" and did not think that Epps's case would go to trial.[3]

The assistant solicitor testified that, after receiving a phone call from the federal prosecutor, he obtained the Billups statement from local investigators and turned it over to the defense attorneys on the case he was prosecuting, which involved a codefendant in the shootout, not Epps. He left the solicitor's office shortly after that case ended and was not involved in the prosecution of Epps's case.

The trial court found the Billups statement "could be considered exculpatory," and therefore, *Brady* applied. However, it found the information was ultimately provided to the defense and was not material because it was available for use by the defense in time for trial. The trial court concluded that although the solicitor's office was "negligent" and "sloppy" during the discovery process, the issues presented did not rise "to the level of a due process violation" which would require dismissal and denied the motion.

The trial court then held a hearing regarding the admissibility of the Facebook video, during which Arkell Eaglin, the victim's fiancée, and Detective Willie McFadden testified. Epps argued that the video could not be authenticated because Eaglin was not present when the video was made and did not know anyone in the video. Epps also asserted that the video violated the rule of completeness because the State did not have the entire video and no one knew what was on it. The trial court ruled that the video had been properly authenticated under Rule 901, SCRE, because "[a] witness with knowledge may authenticate evidence by testifying that a matter is what it is claimed to be." Further, the trial court noted that the State was presenting the entirety of the video that it had in its possession and any arguments regarding the remainder of the video related "to the weight of th[e] evidence, not its admissibility."

---

[3] We note that Epps's counsel interjected a response to this testimony from Blazer, stating, "Correct."

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). Thus, on review, this court is limited to determining whether the trial court abused its discretion. *Id.* "An abuse of discretion occurs when the [trial] court's decision is unsupported by the evidence or controlled by an error of law." *State v. Pope*, 410 S.C. 214, 221, 763 S.E.2d 814, 818 (Ct. App. 2014). "This [c]ourt does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

## I. CONTINUANCE

We hold the trial court did not abuse its discretion in granting the State a continuance to investigate the allegedly incomplete disclosure of *Brady* and Rule 5, SCRCrimP, material. *See State v. Hill*, 409 S.C. 50, 59, 760 S.E.2d 802, 807 (2014) ("In South Carolina '[t]he grant or denial of a continuance is within the sound discretion of the trial [court] and is reviewable on appeal only when an abuse of discretion appears from the record.'" (quoting *Plyler v. Burns*, 373 S.C. 637, 650, 647 S.E.2d 188, 195 (2007))); *State v. Colden*, 372 S.C. 428, 436, 641 S.E.2d 912, 917 (Ct. App. 2007) ("Even without any evidentiary support, '[i]n order for an error to warrant reversal, the error must result in prejudice to the appellant.'" (quoting *State v. Preslar*, 364 S.C. 466, 473, 613 S.E.2d 381, 385 (Ct. App. 2005)); *see also Brady*, 373 U.S. at 87 ("The suppression by the [State] of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.").

The focus of the continuance was to allow the State to investigate Epps's claim that it had received exculpatory information from the federal government in the form of the Billups statement but had failed to turn it over to Epps. It was not clear at the time of the continuance what had happened as the allegations arose in the hours prior to trial, and the import of the *Brady* jurisprudence is to ensure, first and foremost, that the defendant receives a fair trial, as the trial court noted when granting the motion. *See State v. Kennerly*, 331 S.C. 442, 452, 503 S.E.2d 214, 219-20 (Ct. App. 1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999) ("The *Brady* disclosure rule is grounded in the defendant's fundamental right to a fair trial mandated by the Due Process Clause of the Fifth and Fourteenth Amendments."). Further, the trial was ultimately held approximately one month later, and the trial court determined that no *Brady* violation had occurred. Therefore, the trial court

was well within its discretion in granting the continuance. *See State v. Galimore*, 396 S.C. 471, 477-78, 721 S.E.2d 475, 478 (Ct. App. 2012) (affirming the trial court's grant of the State's motion for a continuance was within its discretion because the trial court explained its reasoning, the appellant raised the issue that led to the State's motion and the trial was held only three weeks later); *Hill*, 409 S.C. at 59, 760 S.E.2d at 807 ("In South Carolina '[t]he grant or denial of a continuance is within the sound discretion of the trial [court] and is reviewable on appeal only when an abuse of discretion appears from the record.'" (quoting *Plyler*, 373 S.C. at 650, 647 S.E.2d at 195)); *see also* Rule 5(d)(2), SCRCrimP (explaining that if a party violates the disclosure procedures outlined in the rule, "the court may . . . grant a continuance").

## II.    MOTION TO DISMISS

We hold the trial court did not err by denying Epps's motion to dismiss because Epps failed to establish that a *Brady* violation had occurred. *See State v. Moses*, 390 S.C. 502, 515, 702 S.E.2d 395, 402 (Ct. App. 2010) ("In South Carolina, an individual asserting a *Brady* violation must demonstrate that the evidence: (1) was favorable to the accused; (2) was in the possession of or known by the prosecution; (3) was suppressed by the State; and (4) was material to the accused's guilt or innocence or was impeaching."); *State v. Gathers*, 295 S.C. 476, 481, 369 S.E.2d 140, 143 (1988), *aff'd*, 490 U.S. 805 (1989) ("The State's failure to disclose information warrants a reversal as a *Brady* violation only if the omission deprived the defendant of a fair trial."); *Kennerly*, 331 S.C. at 453-54, 503 S.E.2d at 220 (explaining that if "a Rule 5 violation is shown, reversal is required only where the defendant suffered prejudice from the violation").

Although the Billups statement was arguably exculpatory, we find it was not material because, even without the continuance, Epps discovered it in time to use at trial. *Moses*, 390 S.C. at 515, 702 S.E.2d at 402 (explaining that one element of a *Brady* claim is that the contested evidence "was material to the accused's guilt or innocence or was impeaching"); *Kennerly*, 331 S.C. at 453, 503 S.E.2d at 220 ("[I]nformation is not deemed 'material' if the defense discovers the information in time to adequately use it at trial."); *id.* ("The definition of 'material' for purposes of Rule 5 is the same as the definition used in the *Brady* context."). The testimony from Billups's attorney *and Epps's own attorney* showed that counsel had been alerted to the existence of the statement over a year prior to the original trial date and was uninterested in it because he "already had a defense." *See United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 n.6 (4th Cir. 1985) ("[T]he fact that disclosure came from a source other than the prosecutor is of no consequence.

When determining the constitutional validity of a belated *Brady* disclosure, the relevant inquiry is solely whether the defendant was able to effectively use the exculpatory information."). Further, Epps did not use the statement at trial. *See, e.g.*, *State v. Geer*, 391 S.C. 179, 192-93, 705 S.E.2d 441, 448 (Ct. App. 2010) (holding Geer failed to establish a *Brady* violation "such that there is a reasonable probability the result of her trial would have been different had she received the evidence earlier" because "[t]he audiotape was not played during trial nor did Geer attempt to use its contents to establish a defense").

Thus, we hold that any discovery violation in relation to this evidence did not warrant dismissal of the charge nor does it entitle Epps to a reversal now. *See, e.g.*, *Fradella v. Town of Mount Pleasant*, 325 S.C. 469, 480, 482 S.E.2d 53, 58 (Ct. App. 1997) (reversing the trial court and holding that any discovery violations regarding the prosecutor's failure to turn over photographs and a complete booking report "were not material so as to warrant the sanction of dismissing the charge"); *Gathers*, 295 S.C. at 481, 369 S.E.2d at 143 ("The State's failure to disclose information warrants a reversal as a *Brady* violation only if the omission deprived the defendant of a fair trial.").[4] [5]

### III.    ADMISSION OF FACEBOOK VIDEO

We hold the trial court did not err in admitting the Facebook video into evidence. *State v. Brown*, 424 S.C. 479, 487, 818 S.E.2d 735, 739-40 (2018) ("The admission

---

[4] To the extent Epps relies on the late disclosure of the Facebook video to support this argument, the video was not exculpatory, so the State's failure to disclose it did not amount to a *Brady* violation and Epps was not entitled to dismissal of his charges on this basis. *See Moses*, 390 S.C. at 515, 702 S.E.2d at 402 (explaining that one element of a *Brady* violation is that the contested evidence "was favorable to the accused"); *id.* at 517, 702 S.E.2d at 403 ("Evidence considered favorable to the defendant includes both exculpatory and impeachment evidence . . . ."). Further, while Rule 5 requires the State to turn over "documents and tangible objects" that are "intended for use by the prosecution," the record is clear that Epps had a copy of the video before the initial trial date and then had an additional period of approximately four weeks to investigate it.

[5] We find no merit to Epps's argument regarding the administrative order. *See General Sessions Docket Management Order*, S.C. Sup. Ct. dated May 24, 2023, (Howard Adv. Sh. No. 20) (stating the order is "not intended to create an independent basis for a claim of prosecutorial misconduct if there is a shortcoming in the production of discovery").

or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847-48 (2006)); *id.* at 487, 818 S.E.2d at 740 ("An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." (quoting *Douglas*, 369 S.C. at 429-30, 632 S.E.2d at 848)).

Epps did not present any evidence to establish that he was unable to investigate the video or call a witness to refute the video as a result of the late disclosure. Furthermore, Epps himself created the Facebook video and admitted to detectives that he was making comments on Facebook years prior to trial, so we do not believe Epps was prejudiced by the timing of the disclosure. *See* Rule 5(d)(2) (explaining that if a party fails to comply with its obligations under the rule, "the court *may* order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed" (emphasis added)); *State v. Kerr*, 330 S.C. 132, 150, 498 S.E.2d 212, 221 (Ct. App. 1998) ("Sanctions for noncompliance with disclosure rules are within the discretion of the trial [court] and will not be disturbed absent an abuse of discretion.").

Additionally, the video was properly authenticated pursuant to Rule 901, SCRE. *See* Rule 901(b), SCRE (listing "[b]y way of illustration only, and not by way of limitation, . . . examples of authentication or identification conforming to the requirements of th[e] rule"); *Brown*, 424 S.C. at 488, 818 S.E.2d at 740 (explaining that all "evidence must be authenticated or identified in order to be admissible"); *State v. Green*, 427 S.C. 223, 230, 830 S.E.2d 711, 714 (Ct. App. 2019), *aff'd as modified*, 432 S.C. 97, 851 S.E.2d 440 (2020) ("The authentication standard is not high, and a party need not rule out any possibility the evidence is not authentic." (internal citation omitted)); *id.* ("The trial [court] acts as the authentication gatekeeper, and a party may open the gate by laying a foundation from which a reasonable juror could find the evidence is what the party claims."); *id.* ("Once the trial court determines the prima facie showing has been met, the evidence is admitted, and the jury decides whether to accept the evidence as genuine and, if so, what weight it carries."). Pursuant to Rule 901, Eaglin could sufficiently authenticate the Facebook video via testimony. *See* Rule 901(b)(1), SCRE (listing "testimony of [a] witness with knowledge" as a method of authentication). She testified she received the video from someone on Facebook and watched it as it was originally broadcast live. *See Green*, 427 S.C. at 231, 830 S.E.2d at 715 (finding authentication "may be accomplished by testimony from a person who

sent or received the writing."); *see also, e.g.*, *State v. Hall*, 437 S.C. 107, 120, 876 S.E.2d 328, 335 (Ct. App. 2022) (holding "the trial court erred by failing to admit the Snapchat video messages . . . into evidence" because the testifying witness "received the messages" and "therefore, she could have authenticated the messages with personal knowledge under Rule 901(b)(1)"). Eaglin's testimony was also sufficient to authenticate the video pursuant to Rule 901(b)(4), which provides for authentication by "[a]ppearance, contents, [and] substance . . . taken in conjunction with circumstances." Eaglin testified to the circumstances which she believed led to the creation of the video and identified Epps as the main "speaker" in it. *See Green*, 427 S.C. at 232, 830 S.E.2d at 715 ("Most writings meet the authenticity test through Rule 901(b)(4) . . . .").

Finally, the trial court did not violate Rule 106, SCRE—the "rule of completeness"—by allowing the video to be admitted even though it was only a portion of a much longer recording. *See* Rule 106, SCRE ("When a writing, or recorded statement, or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness be considered contemporaneously with it."); *State v. Patterson*, 367 S.C. 219, 226-27, 625 S.E.2d 239, 243 (Ct. App. 2006) (explaining that, prior to the Rule's enactment, "the opposing party was required to wait until cross-examination to complete the communication, [but] under Rule 106, the party can now require introduction of the remainder of the statement contemporaneous with the original proffer"). Epps does not cite any authority showing that Rule 106 has ever been applied in this way— i.e., to limit or preclude admissibility of a portion of a recording or statement when the entirety is missing or otherwise unavailable. Rather, this court considered a similar question in *State v. Oglesby* and explicitly determined this was *not* the purpose of the rule. 384 S.C. 289, 294, 681 S.E.2d 620, 622-23 (Ct. App. 2009) (rejecting the assertion that "any time a portion of a recording is inaudible due to any interference, the entire recording should be excluded" because it did "not believe th[at] was the purpose of Rule 106"). In our estimation, *Oglesby* is analogous to the present case; whether the entire recording is unavailable because of a technical issue or because, as here, only a portion of the recording was saved, we find Rule 106 does not prevent the introduction of the available portion. *See id.*

**AFFIRMED.**[6]

**THOMAS, MCDONALD, and TURNER, JJ., concur.**

---

[6] We decide this case without oral argument pursuant to Rule 215, SCACR.